DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES,
Appellant,

v.

AnnJeanette SCHUTZ and Mark
Schutz, Appellees.

No. 01–00–01245–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 19, 2002.

Rehearing Overruled April 24, 2003.

Craig Carter, Assistant Attorney General, General Litigation Division, Austin, for Appellant.

David N. Anderson, Pearland, Dominic J. Merino, Alvin, for Appellees.

Panel consists of Justices MIRABAL, NUCHIA, and RADACK.

## OPINION

SHERRY J. RADACK, Justice.

This is an appeal from a bench trial in a declaratory-judgment action. The appellees, AnnJeanette and Mark[1] Schutz ("the Schutzes"), brought against the Department of Protective and Regulatory Services ("the department"). The Schutzes sought a declaratory judgment that the definition of "neglect" in Family Code sec-

---

1. We note that although Mark Schutz was a plaintiff in the district court and was named in the judgment, the district court's findings apply only to AnnJeanette Schutz, *i.e.*, that she was not neglectful and that the statute was unconstitutional as applied to her.

tion 261.001(4)(B)(i) was unconstitutionally vague as applied to AnnJeanette and that AnnJeanette Schutz was not guilty of neglect. TEX. FAM.CODE ANN. § 261.001(4)(B)(I) (Vernon 2002). The district court enjoined the department from holding the administrative hearing. After a bench trial, the district court rendered judgment that AnnJeanette Schutz was not guilty of neglect and that section 261.001(4)(B)(i) was unconstitutionally vague on its face, and awarded attorney's fees to the Schutzes' counsel in the amount of $32,487.50. In five issues, the department argues the district court erred in rendering judgment in the Schutzes' favor because: (1) the district court did not have subject-matter jurisdiction; (2) the district court should have abated the case because an administrative hearing on the same subject was pending; (3) the district court should have granted the department's motion for judgment because there were administrative proceedings pending and declaratory relief was not a proper remedy; (4) the definition of neglect is not unconstitutionally vague; and (5) AnnJeanette Schutz was guilty of neglect under the Family Code.

We reverse the district court's judgment and dismiss the cause.

### Background

On September 15, 1999, Andrea O., a 14–month–old foster child who lived with the Schutzes drowned in the backyard swimming pool at the Schutz home. On the evening Andrea O. drowned, Mark Schutz was at soccer practice with the Schutzes' son. Andrea O. was watching television in the living room with another foster child. AnnJeanette Schutz was on the telephone in the kitchen and, although Andrea O. periodically joined AnnJeanette in the kitchen, AnnJeanette did not continuously visually supervise Andrea O. While AnnJeanette was on the telephone, Andrea O. somehow entered the backyard and drowned in the pool.

The department began an investigation that evening by interviewing the Schutzes. In the Schutz home, two doors lead to the backyard, and therefore, the pool: a heavy wooden door that a child could not open and a sliding glass door that was typically locked. Andrea O. had never exhibited she could open either door by herself. However, AnnJeanette told the department investigator that it may have been possible for Andrea O. to open the sliding door if it were unlocked. The department, based on its investigation, concluded the sliding door had been left unlocked and that Andrea O. gained access to the pool by opening the door herself.

The department found that AnnJeanette Schutz was guilty of "neglectful supervision" because she did not maintain adequate knowledge of Andrea O.'s whereabouts to prevent the child from gaining access to the pool and because there were not adequate barriers to prevent Andrea O. from reaching the pool. AnnJeanette Schutz requested an administrative review. The department upheld the finding of neglect.

AnnJeanette then appealed the finding of neglect to the State Office of Administrative Hearings ("SOAH"), and SOAH scheduled a hearing. However, before SOAH could conduct the hearing, the Schutzes filed suit in district court and obtained a temporary restraining order to prohibit SOAH from proceeding with the hearing.

The department filed a plea to the jurisdiction and a plea in abatement in which it argued the district court did not have jurisdiction because the Schutzes had not exhausted their administrative remedies and, in the alternative, the district court should abate the proceeding because of the hear-

ing pending before SOAH. The department also sought dismissal of its executive director, Jim Hines, who was named as a defendant in the district court proceeding. The district court dismissed Hines, but denied the department's plea to the jurisdiction and plea in abatement.

After a bench trial, the district court rendered judgment that the Family Code definition of "neglect" was unconstitutional as applied to AnnJeanette and that AnnJeanette had not neglected Andrea O. In addition to the points of error related to the judgment against the department, the Schutzes' motion to dismiss the appeal is before this Court.

### , *Motion to Dismiss*

█ Appellees argue the appeal should be dismissed because the department waived its right to appeal. This argument is based on an exchange between counsel and the district court during the hearing on the department's plea to the jurisdiction:

> **Mr. Anderson (counsel for the Schutzes):** Your Honor, the only reason he's [Jim Hines, Executive Director of the department] in the lawsuit in his official capacity is if the Orders need to be issued, the Court can order them.
>
> **Mr. Russell:** Your Honor, I'll just stipulate. If you order the agency to do something, I'll see that it's done.
>
> **The Court:** I believe you.
>
> **Mr. Anderson:** No objection, Your Honor. We'll proceed against the department.

Citing *In re Long*, appellees argue that a party may, by agreement, waive its right to appeal and that is what the department did when its counsel made the statement

quoted above. 946 S.W.2d 97, 99 (Tex. App.-Texarkana 1997, no writ). *Long*, however, dealt with a situation in which a party waived its right to appeal in a written settlement document. *Id.* The court stated that because the party had expressly agreed not to appeal from the orders at issue in the appeal, it had no option but to hold him to the terms of his agreement.[2] *Id.*

█ Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Robinson v. Robinson*, 961 S.W.2d 292, 299 (Tex.App.-Houston [1st Dist.] 1997, no writ); *Gilbert v. Pettiette*, 838 S.W.2d 890, 894 (Tex.App.-Houston [1st Dist.] 1992, no writ). In determining if a waiver has in fact occurred, the court must examine the acts, words, or conduct of the parties and it must be "unequivocally manifested" that it is the intent of the party to no longer assert the right. *Robinson*, 961 S.W.2d at 299; *Enterprise–Laredo v. Hachar's*, 839 S.W.2d 822, 835–36 (Tex.App.-San Antonio 1992, no writ). "Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law." *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 111 (Tex.1999); *Tenneco, Inc. v. Enter. Prods.*, 925 S.W.2d 640, 643 (Tex. 1996).

The facts in this case are not in dispute. Originally, both the department and its executive director, Jim Hines, were defendants in district court. Both filed a plea to the jurisdiction. Taken in context, the department's counsel was reassuring the district court that, if the district court dismissed Mr. Hines from the lawsuit, the

---

2. The *Long* court noted that this rule of law is more often applied in the context of arbitration and that it is well settled that a common-law arbitration agreement may provide there is no right of appeal. 946 S.W.2d at 99 n. 1.

department would comply with court orders. The statement was made pretrial, not (as in *Long* ) in relation to a settlement or arbitration agreement. Counsel was referring to compliance with court orders generally, not a specific order or judgment that had already been rendered. There was no express mention of the department waiving its right to appeal; if anything, it was agreeing only to waive any complaint regarding Mr. Hines' absence from the lawsuit. It was apparently based on this representation that the district court dismissed Mr. Hines. Based on these facts and the circumstances surrounding the exchange, the department simply did not unequivocally manifest an intention to waive its right to appeal.

We overrule the Schutzes' motion to dismiss the appeal.

### *Plea to the Jurisdiction*

In its first issue, the department argues the district court erred when it denied the department's plea to the jurisdiction. The department's plea was based on its argument that SOAH had primary jurisdiction of the case because the Schutzes failed to exhaust their administrative remedies before filing suit.

### A. Standard of Review

The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *Texas Dept. of Criminal Justice v. Miller,* 48 S.W.3d 201, 203 (Tex.App.-Houston [1st Dist.] 1999), *rev'd on other grounds,* 51 S.W.3d 583, 589 (Tex.2001). A plea to the jurisdiction is appropriate whenever a governmental unit believes that the trial court lacks subject-matter jurisdiction. *Miller,* 48 S.W.3d at 203; *Texas Dept. of Transp. v. Jones,* 983

S.W.2d 90, 91–92 (Tex.App.-Corpus Christi 1998) *rev'd on other grounds,* 8 S.W.3d 636, 637 (Tex.1999). When deciding whether to grant a plea to the jurisdiction, the trial court must look solely to the allegations in the petition. *Miller,* 48 S.W.3d at 204; *Liberty Mut. Ins. Co. v. Sharp,* 874 S.W.2d 736, 739 (Tex.App.-Austin 1994, writ denied). The court of appeals must take the allegations in the petition as true and construe them in favor of the pleader. *Texas Ass'n of Bus.,* 852 S.W.2d at 446; *Miller,* 48 S.W.3d at 204. Whether a trial court has subject-matter jurisdiction is a question of law and is reviewed de novo. *Mayhew v. Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *Miller,* 48 S.W.3d at 204.

### B. Primary Jurisdiction and Exhaustion of Administrative Remedies

Primary jurisdiction is a judicially-created doctrine in which a court may dismiss or stay an action pending a resolution of some portion of the case by an administrative agency. *Harris County Mun. Util. Dist. No. 48 v. Mitchell,* 915 S.W.2d 859, 863–64 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *Shell Pipeline Corp. v. Coastal States Trading, Inc.,* 788 S.W.2d 837, 842 (Tex.App.-Houston [1st Dist.] 1990, writ denied). Under the doctrine of primary jurisdiction, a matter delegated by statute to an administrative agency for initial action must be determined by that agency before the matter may be reviewed by a court. *Harris County,* 915 S.W.2d at 864; *Pedraza v. Tibbs,* 826 S.W.2d 695, 699 (Tex.App.-Houston [1st Dist.] 1992, writ dism'd w.o.j.). "Primary jurisdiction" applies "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Shell Pipeline,* 788

S.W.2d at 842 (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). It is especially appropriate to apply the doctrine when uniformity of certain types of administrative decisions is desirable, or when there is a need for the expert and specialized knowledge of the agencies. *Shell Pipeline*, 788 S.W.2d at 842. However, the phrase "primary jurisdiction" indicates that *both* an administrative agency and a court have subject matter jurisdiction. *Id.* Because the doctrine presumes the district court had subject matter jurisdiction, we consider it below in connection with whether the district court should have abated the case.[3] Therefore, in this context we consider only whether the Schutzes were required to, and did, exhaust their administrative remedies.

▪▪▪ Under the doctrine of exhaustion of administrative remedies, when the legislature has provided a method of administrative review, a complainant must first exhaust his administrative remedies before filing suit. *Firefighters' & Police Officers' Civil Serv. Comm'n v. Herrera*, 981 S.W.2d 728, 732 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Pedraza*, 826 S.W.2d at 699. In addition, if the legislature mandates that a claimant exhaust administrative remedies, the mandate is the equivalent of a legislative investiture of exclusive original jurisdiction in the administrative agency. *See Davis v. Methodist Hosp.*, 997 S.W.2d 788, 793 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The exhaustion of administrative remedies is therefore a jurisdictional issue. *Id.* However, when there is no such provision in a statute, there is no jurisdictional issue. *Id.*

## C. Did The Statutory Scheme Require Exhaustion of Remedies?

The Human Resources Code and the Family Code both contain provisions that relate to the department's functions of regulating child-care facilities and investigating abuse and neglect.

The Human Resources Code created the department. TEX. HUM. RES.CODE ANN. § 40.002 (Vernon 2001). The department has primary responsibility for: (1) providing protective services for children and elderly and disabled persons; (2) providing family support and family-preservation services which respect the fundamental right of parents to control the education and upbringing of their children; (3) regulating child-care facilities and child-care administrators; and (4) implementing and managing programs intended to provide early intervention or prevent at-risk behaviors that lead to child abuse, delinquency, running away, truancy, and dropping out of school. *Id.*

The department is subject to the Administrative Procedure Act. TEX. HUM. RES. CODE ANN. § 40.006 (Vernon 2001); TEX. GOVT.CODE ANN. §§ 2001.001–.902 (Vernon 2000 & Supp.2002). SOAH conducts hearings in contested cases for the department. TEX. HUM. RES.CODE ANN. § 40.066 (Vernon 2001).

Chapter 42 of the Human Resources Code sets out the duties and responsibilities relating to child-care-licensing programs. The Schutzes were licensed and regulated as a foster care facility under the standards and rules set up in that chapter. *See* TEX. HUMAN RES.CODE ANN. § 42.001–.111. (Vernon 2001 & Supp.2002). The purpose of that chapter is to protect the health, safety, and well-being of the

---

**3.** Whether the trial court actually has subject-matter jurisdiction must be determined on a case-by-case basis.

children of the State who reside in child-care facilities by establishing statewide minimum standards for their safety and protection and by regulating the facilities. TEX. HUM. RES.CODE ANN. § 42.001 (Vernon Supp.2002).

The Family Code governs how the department conducts investigations of child abuse and neglect. *See* TEX. FAM.CODE ANN. § 261.001–.409 (Vernon 2002). Subchapters D and E of Chapter 261 require that the department conduct the investigations in a certain manner and to make determinations relating to those investigations. TEX. FAM.CODE ANN. §§ 261.001–.316 (Supchapter D), 261.401–409 (Subchapter E) (Vernon 2002).

Family Code section 261.301 (part of subchapter D) provides:

(a) ...[T]he department or designated agency shall make a prompt and thorough investigation of a report of child abuse or neglect allegedly committed by a person responsible for a child's care, custody, or welfare....

(b) A state agency shall investigate a report that alleges abuse or neglect occurred in a *facility* operated, license, certified, or registered by that agency *as provided by Subchapter E.*

TEX. FAM.CODE ANN. § 261.301(a) (Vernon 2002) (emphasis added).

Family Code section 261.401, the relevant portion of subchapter E to which section 261.301 refers, states, "[a] state agency that operates, licenses, certifies, or registers a *facility* in which children are located shall make a prompt, thorough investigation of a report that a child has been or may be abused, neglected, or exploited in the facility. The primary purpose of the investigation shall be the protection of the child." TEX. FAM.CODE ANN. § 261.401(b) (Vernon 2002) (emphasis added).

The department argues that chapter 42 of the Human Resources Code chapter 42 applies to the Schutzes and that it contains a provision requiring exhaustion of remedies. The Schutzes argue that Family Code chapter 261 rather than Human Resources Code chapter 42 governs the investigation of allegations of neglect, and chapter 261 expressly provides an accused need not exhaust its administrative remedies before seeking judicial review.

The purpose of chapter 42 is to:

protect the health, safety, and well-being of the children of the state who reside in child-care facilities by establishing statewide minimum standards for their safety and protection and by regulating the facilities through a licensing program or by requiring child-care facilities to be regulated by alternative accreditation bodies.

TEX. HUM. RES.CODE ANN. § 42.001 (Vernon Supp.2002). A "child-care facility" means:

a facility licensed, certified, or registered by the department to provide assessment, care, training, education, custody, treatment, or supervision for a child who is not related by blood, marriage, or adoption to the owner or operator of the facility, for all or part of the 24–hour day, whether or not the facility is operated for profit or charges for the services it offers.

TEX. HUM. RES.CODE ANN. § 42.002(3) (Vernon Supp.2002). According to the department, the Schutzes operate a foster home, and therefore must comply with chapter 42. By extension, the department argues, chapter 42 incorporates the requirements of the Government Code that a "person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review...." TEX. GOV'T CODE ANN. § 2001.171 (Vernon 2000).

With respect to the remedies available *within* the department, an "alleged perpetrator"[4] about whom a finding of child abuse or neglect is to be released or against whom an adverse action is to be taken by the department is entitled to a hearing under the Administrative Procedures Act. 40 TEX. ADMIN. CODE §§ 730.1701, .1702 (2002). After the administrative law judge has rendered a final decision, either party may file a written motion for rehearing. 40 TEX. ADMIN. CODE § 730.1716(e), (g) (2002).

The Schutzes counter that Human Resources Code chapter 42 does not apply to "an agency foster home or an agency foster group home" and that because they maintain an "agency foster home,"[5] they are exempt from its exhaustion-of-remedies requirement. They further counter that the Family Code chapter 261 governs investigations of child abuse or neglect, and it is that statute which determines whether they must exhaust their remedies before pursuing a judicial remedy.

**Foster Home or Agency Foster Home?**

 Under chapter 42, a "foster home" means "a child-care facility that provides care for not more than six children for 24 hours a day." TEX. HUM. RES.CODE ANN. § 42.002(6) (Vernon Supp.2002). An "agency foster home" means "a facility that provides care for not more than six children for 24 hours a day, is used only by a licensed child-placing agency, and meets department standards." TEX. HUM. RES. CODE ANN. § 42.002(11) (Vernon Supp. 2002). A "child-placing agency" means:

a person, including an organization, other than the natural parents or guardians of a child who plans for the placement of or places a child in a child-care facility,

agency foster home, agency foster group home, or adoptive home.

TEX. HUM. RES.CODE ANN. § 42.002(12) (Vernon Supp.2002).

The Schutzes argue they operate an agency foster home because the department is a "child-placing agency" within the meaning of the statute. The department argues the Schutzes operate a foster home because they are directly licensed by the department rather than a private child-placing agency.

 In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). We first look at the statute's language and presume that the legislature intended the plain meaning of its words. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 282 (Tex.1999); *Albertson's*, 984 S.W.2d at 960. We then consider the object sought to be obtained, circumstances under which the statute was enacted, legislative history, consequences of a particular construction, and administrative construction of the statute. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). We do this regardless of "whether or not the statute is considered ambiguous on its face." TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998). Finally, it is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981); *Eddins–Wal-*

---

4. An "alleged perpetrator" is a "person alleged to have abused or neglected a child...." 40 TEX. ADMIN. CODE § 730.1701(3) (2002).

5. TEX. HUM. RES.CODE ANN. § 42.041(b)(2) (Vernon Supp.2002).

*cher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93, 96 (1957).

The legislature opted to draw a distinction between "foster homes" and "agency foster homes" that turned on whether a child-placing agency acted as an intermediary between the foster home and the department. We see no indication the legislature intended the department to be considered a "child-placing agency." Instead, the statute's language apparently sought to treat foster homes overseen by a child-placing agency differently because the private agency is held accountable for problems in its foster homes. Further, the Schutzes' construction would essentially render all foster homes "agency foster homes" regardless of whether they are licensed directly by the department or by a private child-placing agency. This would render the distinction made by the legislature meaningless. Therefore, we hold that the Schutzes operated a "foster home" within the meaning of the Human Resources Code.

**Application of the Family Code**

 Under the Family Code, the department shall investigate reports of child abuse or neglect allegedly committed by a "person responsible for the child's care, custody, or welfare." Tex. Fam.Code Ann. § 261.301(a) (Vernon 2002). A "person responsible for the child's care, custody, or welfare" includes a foster parent. Tex. Fam.Code Ann. § 261.001(5)(A) (Vernon 2002). Section 261.309 provides for informal review of department investigations of abuse. Tex. Fam.Code Ann. § 261.309 (Vernon 2002). Under that section, a department employee in administration who was not involved in or did not directly supervise the investigation may, at the accused's request, review the investigation and sustain, alter, or reverse the depart-

ment's original findings. *Id.* at § 261.309(c). The Schutzes argue that because section 261.309(e) provides that a "person is not required to exhaust the remedies provided by this section before pursuing a judicial remedy provided by law," they were not required to submit to a hearing before SOAH before filing suit in district court.

We disagree. Section 261.309(e) states that a person who allegedly abused or neglected a child need not request an *internal* review of the department's investigation before pursuing a judicial remedy. *See* 40 Tex. Admin. Code § 730.1702 (2002). In other words, section 261.309(e) does not confer a right on the Schutzes to resort to filing suit in district court without submitting to a formal administrative hearing. *See* 40 Tex. Admin. Code §§ 730.1701–1716 (2002).

Further, at least with respect to allegations of abuse or neglect that occurred in a foster home, a separate section of the Family Code governs: "a state agency shall investigate a report that alleges abuse or neglect occurred in a facility operated, licensed, certified, or registered by that agency as provided by Subchapter E." [6] Tex. Fam.Code Ann. § 261.301(b) (Vernon 2002). In conducting an investigation for such a facility, the department shall perform the investigation as provided by Subchapter E (not Subchapter D, the subchapter on which the Schutzes rely) and the Human Resources Code. *Id.;* Tex. Fam.Code Ann. §§ 261.401–.409 (Vernon 2002). As noted above, the definition of "child-care facility" includes a "foster home." *See* Tex. Hum. Res.Code Ann. § 42.002(3), (6) (Vernon Supp.2002). In other words, when the alleged abuse occurred in a foster home, the department conducts the investigation under Family Code sections 261.401–.409 *and* Human

6. Tex. Fam.Code Ann. §§ 261.401–.409 (Vernon 2002).

Resources Code chapter 42. Because the Family Code provision that deals with investigations of abuse or neglect in a foster home refers back to the Human Resources Code (and therefore incorporates the exhaustion-of-remedies requirement), the Schutzes were required to submit to an administrative hearing regardless of whether the Human Resources Code or the Family Code applies.

### Additional Jurisdictional Considerations

In addition to the jurisdictional issues discussed above, the consideration of sovereign immunity also affects this case. No right of judicial review from the action of an administrative agency exists unless a statute provides for such review, the action violates constitutional procedural due process, or the constitution waives the state's immunity from suit. *Southwest Airlines Co. v. Texas High–Speed Rail Auth.*, 867 S.W.2d 154, 157 (Tex.App.-Austin 1993, writ denied); *see City of Port Arthur v. S.W. Bell Tel. Co.*, 13 S.W.3d 841, 845 (Tex.App.-Austin 2000, no pet.). Although the reasoning behind this general rule is usually unstated, the rule is a necessary corollary to the doctrine of sovereign immunity. *Southwest Airlines*, 867 S.W.2d at 157.

Absent specific legislative authorization, persons aggrieved by an administrative agency's action have no recourse in the courts due to the first principle of the doctrine of sovereign immunity—the state as sovereign cannot be sued without its permission. *Id.*; *see Hosner v. De Young*, 1 Tex. 764, 769 (1847); *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 592 (Tex.App.-Austin 1991, writ denied). The doctrine bars a suit for judicial review against the state unless the state has expressly given its consent to be sued. *Dillard*, 806 S.W.2d at 592; *see Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex.1970). A suit against an agency of the state is considered to be a suit against the state. *Id.*; *see Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). The second principle of the doctrine of sovereign immunity is that the state has immunity from liability even though the state has consented to be sued. *Dillard*, 806 S.W.2d at 592.

There is no statutory law affording an aggrieved party judicial review of a formal administrative hearing under these circumstances, even had the Schutzes submitted to the hearing. *See Carrizales v. Dept. of Protective & Regulatory Servs.*, 5 S.W.3d 922, 924 (Tex.App.-Austin 1999, pet. denied). In *Carrizales*, the Austin Court of Appeals noted the Family Code authorizes the department to conduct investigations and make determinations in reported cases of abuse or neglect of children. *See* TEX. FAM.CODE ANN. § 261.301(a), (e)(1) & (2) (Vernon 2002). If the name of a person found to have committed neglect of a child is placed in the central registry governing future employment with children, then that individual is entitled to a SOAH hearing before his name may be released. *See Carrizales*, 5 S.W.3d at 924; 40 TEX. ADMIN. CODE § 730.1702 (2002). Pursuant to that authority, the hearing is held before an administrative law judge of SOAH, and the administrative law judge, after hearing evidence, makes findings of fact and conclusions of law and issues a final decision. *Carrizales*, 5 S.W.3d at 924. There is no provision for judicial review of the administrative law judge's order.

In *Carrizales*, the appellant relied solely on the Administrative Procedure Act as a basis for his suit in district court. *Id.*; *see* TEX. GOV'T CODE ANN. § 2001.171 (Vernon 2000). However, the Austin court has held in numerous opinions that section 2001.171 is a procedural provision that does not

confer subject-matter jurisdiction on the district court to entertain a petition for judicial review unless review is authorized under the agency's enabling legislation or another statutory provision. *Carrizales,* 5 S.W.3d at 924; *P.R.I.D.E. v. Texas Worker's Comp. Com'n,* 950 S.W.2d 175, 180 (Tex.App.-Austin 1997, no writ); *Texas Dept. of Transp. v. T. Brown Constructors, Inc.,* 947 S.W.2d 655, 658 (Tex.App.-Austin 1997, writ denied); *Firemen's Pension Com'n v. Jones,* 939 S.W.2d 730, 732–33 (Tex.App.-Austin 1997, no writ); *Employees Ret. Sys. of Texas v. Foy,* 896 S.W.2d 314, 316 (Tex.App.-Austin 1995, writ denied); *S.C. San Antonio, Inc. v. Texas Dept. of Human Servs.,* 891 S.W.2d 773, 776 (Tex.App.-Austin 1995, writ denied); *Motorola, Inc. v. Bullock,* 586 S.W.2d 706, 708–09 (Tex.Civ.App.-Austin 1979, no writ).

The Schutzes have not identified, either in the district court or in their brief to this Court, any statute under which the legislature has waived governmental immunity from suit that would entitle them to judicial review of the department's finding of neglect. *Carrizales* and our search for such a statute indicates there is not one. Therefore, had the Schutzes complied with the administrative procedure for review of the finding of neglect, they would still not be entitled to a judicial review of the administrative law judge's order. However, Mrs. Schutz's due-process challenge of the definition of "neglect" would be reviewable if, in contrast to *Carrizales,* she brings that claim in district court once she has exhausted her administrative remedies. *See Carrizales,* 5 S.W.3d at 924.

In this case, the Schutzes refused to submit to a formal administrative hearing. Neither party argues that, in the event the district court did not have jurisdiction, the Schutzes would not be able to seek an administrative hearing to review the department's finding of neglect. Once they have done so, AnnJeanette Schutz[7] is entitled to bring her due-process claims in district court. Because AnnJeanette Schutz did not exhaust her administrative remedies, we hold the district court did not have subject-matter jurisdiction over her due-process claim. In all other respects, the trial court did not have subject-matter jurisdiction regardless of whether the Schutzes' exhausted their administrative remedies.

We sustain issue one.

### Conclusion

We reverse the district court's judgment and dismiss the cause.

---

7. Again, we note the finding of neglect by the department was against AnnJeanette Schutz only. Likewise, the district court's judgment named only her.