Opinion issued June 5, 2003



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01007-CV




ARCH W. HELTON AND HELTON PROPERTIES, INC., Appellants

V.

RAILROAD COMMISSION OF TEXAS AND TRI-UNION
DEVELOPMENT CORPORATION, Appellees




On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 13580*RM00




O P I N I O N

          Appellants, Arch W. Helton and Helton Properties, Inc. (Helton) challenge the
trial court’s judgment, entered in a suit for judicial review of a final order issued by
appellee, the Railroad Commission of Texas (the commission). The trial court’s
judgment affirmed the commission’s interpretation of an earlier order the commission
issued under the authority of the Mineral Interest Pooling Act (MIPA). See Tex.
Nat. Res. Code Ann. §§ 102.001-.112 (Vernon 2001).


 Helton brings three issues
in which he contends that the commission (1) unlawfully ruled that the MIPA forced-pool unit created by the commission in 1980 for the Alvin North (8550) Field
“remains in effect and is not dissolved,” (2) abrogated its statutory duty to reclassify
the unit, and (3) entered an arbitrary order that detrimentally affects only Helton’s
rights. We conclude, however, that challenges raised by the commission and
appellee, Tri-Union Development Corporation (Tri-Union), concerning Helton’s right
to relief in the trial court, are dispositive of the appeal. We affirm the trial court’s
judgment based on those challenges. 
Undisputed Facts and Procedural History
          The Alvin North (8550) Field was discovered in 1976. Permanent field rules
formulated by the commission in 1979 specified gas proration units for this field, with
the reservoir being classified as gas-producing. Owners of working interests within
the field had already voluntarily pooled their interests before 1980, when the
commission authorized a forced MIPA pool for all mineral interests in the 244-acre
Alvin North (8550) field reservoir. The commission issued its 1980 forced pooling
order on the application of J. Wylie Harris, who owned both a working interest and
royalty interests within the field. From before 1980 through 1985, Buttes Resource
Company (Buttes) operated the pooled unit and produced gas from the drillsite known
as the Buttes Resources Reese Gas Unit No. 1-L well. The Buttes unit was replaced
in 1985 and recompleted at the E.J. Force Well No. 1 in the Alvin North (8550) field. 
The E.J. Force Well No. 1 is the only well in the field and has been the MIPA gas-unit drillsite since 1985. Tri-Union currently operates the unit. Helton’s property
consists of two non-drillsite tracts adjacent to the drillsite, and Helton also owns a
mineral interest in one of the tracts that formed the pooled unit. 
          The unit produced hydrocarbons without interruption through the present, but
currently produces more oil than gas. Until late 1987, gas was produced at a gas-to-oil ratio of about 70,000 cubic feet per barrel of liquid, but production is now less
than 10,000 cubic feet of gas per barrel of liquid. The liquid produced is crude oil,
not condensate. Although “thought to be” a gas-producing well in 1980, the parties
agree that from a production standpoint, the unit is now more properly classified as
an oil well. 
          In 1987, Helton applied to the commission to reclassify the E.J. Force Well No.
1 as an oil well, rather than a gas well, based on the well’s gas-to-oil production ratio. 
While Buttes was still the operator of the field, the commission twice granted a
request by Buttes that the unit remain classified as a gas well. In 1999, the
commission approved reclassification of the unit as an oil well. 
          In late 1999, Helton applied to the commission to dissolve the MIPA pooling
unit and to divide the E.J. Force Well No. 1 unit into its separate tracts. This
prompted a request by Tri-Union that the commission determine the status of the unit
and its proper classification. The commission held an examiners’ hearing to consider
Tri-Union’s status and, contingently, Helton’s request to divide the unit. Helton and
Tri-Union participated in the hearing through counsel, and Harris appeared, testified,
and argued as a third-party intervenor. 
          The examiners’ opinion, supported by findings of fact and conclusions of law,
recited that the pooled unit was properly formed, that “none of the statutory
conditions for the involuntary dissolution of the pooled unit” had been met, and that
the unit thus remained in effect. The commission adopted the examiners’ findings of
fact and conclusions of law, ordered that the E.J. Force Unit, Alvin North (8559)
Field remain in effect and not be dissolved, and denied Helton’s request to divide the
unit as moot. Helton sought judicial review of that order from the trial court, but did
not serve Harris with a copy of the petition seeking judicial review. The trial court
signed a broad order that affirmed the commission’s ruling without stating any
reasons. 
 

Standard and Scope of Review
          An agency’s enabling legislation determines the proper procedures for
obtaining review of the agency’s decision. Tex. Nat. Res. Comm’n v. Sierra Club, 70
S.W.3d 809, 811 (Tex. 2002). The commission issued the order challenged here
under MIPA.


 MIPA authorizes judicial review of a commission pooling order “in
a manner other than by trial de novo” in the district court of the county where the land
is located, here Brazoria County. See Tex. Nat. Res. Code Ann. § 102.111,
§102.112. MIPA’s minimal provisions, however, must be read in conjunction with
the Administrative Procedures Act (APA), Tex. Gov’t Code Ann. §§ 2001.171-.178
(Vernon 2000). See Sierra Club, 70 S.W.3d at 812. When the APA conflicts with
agency-enabling legislation, the latter controls. Sierra Club, 70 S.W.3d at 812. 
When, as here, the acts do not conflict, the APA controls. See id.
           The commission issued the order Helton challenges after conducting a
contested-case hearing. See Tex. Gov’t Code Ann. § 2001.003(1) (Vernon 2000) 
(defining “contested case” as “a proceeding . . . in which the legal rights, duties, or
privileges of a party are to be determined by a state agency after an opportunity for
adjudicative hearing”). In accordance with the governing statutes, Helton’s suit for
judicial review was conducted without a jury, and the trial court reviewed the
commission’s order under the substantial-evidence test based solely on the record
before the commission. See Tex. Gov’t Code Ann. §§ 2001.174-.175 (Vernon
2000) (governing “procedures for review” and “review” under “Substantial Evidence
Rule or Undefined Scope of Review”); R.R. Comm’n v. Pend Oreille Oil & Gas Co.,
817 S.W.2d 36, 40 (Tex. 1991) (construing predecessor to APA and holding that
“other than by trial de novo” manner of review restricts judicial review to agency
record). 
          As the party challenging the commission’s order, Helton had the burden in the
trial court to demonstrate a lack of substantial evidence to support the commission’s
order. See Miller v. Houston Indep. Sch. Dist., 51 S.W.3d 676, 680 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). Under the substantial-evidence test,
the trial court could not substitute its judgment for that of the commission and could
not reverse its order unless the commission violated one of the six distinct bases for
reversal under the APA and, in that event, the trial court could not grant relief, but
only reverse or remand to the commission. See Tex. Gov’t Code Ann. §
2001.174(2)(A)-(F);


 Cash Am. Int’l, Inc. v. Bennett, 35 S.W.3d 12, 17 (Tex. 2000)
(judicial review under APA of Pawnshop Act decision of Consumer Credit
Commissioner); Sierra Club v. Tex. Nat. Res. Conservation Comm’n, 26 S.W.3d 684,
688 (Tex. App.—Austin 2000) (Sierra Club I), aff’d on other grounds, 70 S.W.3d
809 (Tex. 2002) (Sierra Club II) (judicial review under APA of Solid Waste Disposal
Act decision of Natural Resource Conservation Commission).  
Consequences of Failure to Serve Copy of Petition on J. Wylie Harris
          As in the trial court, the commission and Tri-Union contend that section
2001.176(b)(2) of the APA required Helton to serve Harris with a copy of Helton’s
petition for judicial review of the commission’s order. See Tex. Gov’t Code Ann.
§ 2001.176(b)(2) (Vernon 2000). The commission and Tri-Union further contend that
Helton’s undisputed failure to serve Harris compelled the trial court to dismiss
Helton’s petition for judicial review, or, alternatively, to deny Helton relief for failure
to prove its case. Helton concedes that it did not serve Harris with a copy of the
petition, but disputes that it was required to because Harris was “not a party.” Helton
also disputes whether the commission and Tri-Union may properly reassert their
section 2001.176(b)(2) challenge on appeal, because they did not file notices of
appeal to assert those challenges. 
A.      Nature of Judicial Review of Agency Decisions
          Parties have no absolute right to challenge an administrative order: the right
of judicial review arises only when (1) a statute creates it, (2) the order adversely
affects a vested property right, or (3) the order otherwise violates a constitutional
right. See Gen. Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 599 (Tex.
2001); cf., Dep’t of Protective & Regulatory Servs. v. Schutz, No. 01-00-01245-CV,
slip op. at 19-20 (Tex. App.—Houston [1st Dist.] Dec. 19, 2002, no pet. h.) (“No right
of judicial review from the action of an administrative agency exists unless a statute
provides for such review, the action violates constitutional procedural due process,
or the constitution waives the state’s immunity from suit.”). The doctrine of
sovereign immunity is the rationale that underlies these prohibitions. See Lowe v.
Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976); Schutz, slip op. at 20. A suit
against a state agency is a suit against the State, which, as sovereign, cannot be sued
without its consent. Lowe, 540 S.W.2d at 298; Schutz, slip op. at 20; see Dillard v.
Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.—Austin 1991, writ
denied). 
B.      Section 2001.176(b)(2) Requires Service of Copy of Petition on “Party” 
          As addressed above, MIPA and the APA jointly authorize judicial review of
orders of the commission. See Tex. Nat. Res. Code Ann. § 102.111 (MIPA
provisions authorizing judicial review of commission pooling order); Tex. Gov’t
Code Ann. § 2001.171 (APA provisions authorizing suit for judicial review of order
of state agency). Both statutes impose conditions, in the form of procedural
requirements, on the potential waiver of the commission’s immunity created by those
statutes. 
          MIPA states no requirements concerning service, but APA section
2001.176(b)(2) requires that a party seeking judicial review serve a copy of the
petition “on the state agency and each party of record in the proceedings before the
agency.” Tex. Gov’t Code Ann. § 2001.176(b)(2) (emphasis added). The
requirement is mandatory. See Sierra Club II, 70 S.W.3d at 814 (holding that APA
section 2001.176(b)(2) controlled service on parties other than Texas Natural
Resources Conservation Commission and that Sierra Club had complied by providing
copy of petition to all parties to commission proceeding). 
C.      Harris was “Party” Entitled to Service of Helton’s Petition 
          The legislature authorized judicial review of commission orders under MIPA
to allow persons affected by a pooling order the opportunity of judicial review. R.R.
Comm’n v. Miller, 434 S.W.2d 670, 673 (Tex. 1968); see also Sierra Club II, 70
S.W.3d at 812-813 (agreeing with Sierra Club’s contention that purpose of APA
section 2001.176(b)(2) is to provide notice so that “participants in the contested-case
proceeding” may intervene in suit for judicial review and that service of copy of
petition accomplishes this purpose). 
          Helton defends its failure to serve a copy of its petition for judicial review on
Harris by pointing out that Harris did not request “party status” and identified himself
as no more than an “intervenor” in his preliminary remarks at the examiners’ hearing.
But Helton’s narrow focus on Harris’s preliminary remarks before the commission
ignores both the extent of Harris’s participation before the commission and the extent
Harris would be affected by Helton’s proposal. 
          The record of the contested-case hearing shows that Harris participated fully
before the examiners. He was sworn and testified by narrative statement concerning
his interests and those of other owners of mineral rights and described costs he and
others had incurred in improving and maintaining the pooling unit. In addition, he
corrected assertions by Helton that the pooling unit had “watered out,” objected to
being “cut out” by Helton’s proposal to dissolve the pooling unit, and was cross-examined by Helton’s counsel. As Helton’s counsel conceded, the actual controversy
before the commission arose from a dispute between Harris and Helton over whether
Helton could dissolve the pooling unit and thus exercise law-of-capture rights to the
oil that the well was producing increasingly. And, as an expert landman for Tri-Union explained, if the commission dissolved the pooling unit, Tri-Union would be
affected only nominally, but Harris would no longer receive any compensation. 
          APA section 2001.003(4) defines “party” as “a person or state agency named
or admitted as a party.” Tex. Gov’t Code Ann. § 2001.003(4) (Vernon 2000). The
rules of the commission supplant this definition, however, by identifying “parties to
a contested case” as “applicants, protestants, petitioners, complainants, respondents,
and intervenors.” 16 Tex. Admin. Code § 1.61(a) (Tex. R.R. Comm’n, Classification
and Alignment of Parties). The rules further define “intervenor” as a person or
agency, “other than an applicant, complainant, protestant, or respondent, who is
permitted to become a party to a proceeding.” 16 Tex. Admin. Code § 1.62(3) (Tex.
R.R. Comm’n, Parties Defined). As an undisputed intervenor who participated before
the commission in the contested-case hearing, Harris was a “party” under the
commission’s rules. 
          The rules of the commission also recognize that initial designations of parties
are not binding, by permitting the hearing examiner to “assign a party an appropriate
designation.” 16 Tex. Admin. Code § 1.61(a) (Tex. R.R. Comm’n, Classification
and Alignment of Parties). Thus, despite his initial designation as a mere intervenor,
the nature of the controversy and Harris’s participation in the contested-case hearing
resulted in the commission’s acknowledging Harris’s status as a party by including
him in the May 11, 2000 “Notice to the Parties” by which the commission forwarded
the examiners’ proposed decision. The commission issued this notice in compliance
with its rules, which require prompt service of a copy of proposals for decision to
“each party or its authorized representative.” 16 Tex. Admin. Code § 1.141(b) (Tex.
R.R. Comm’n, Proposals for Decision). The commission also forwarded a copy of
its final order to Harris. 
          Given the legislative purposes that authorize the petition for judicial review
and that require service of a copy of the petition on parties to the contested-case
hearing, the pertinent statutory definitions and rule provisions, as well as the conduct
of those appearing before the examiners and the commission’s examiners themselves,
we hold that Harris was a party to the contested-case hearing under APA section
2001.002(4) and was thus entitled to service of a copy of Helton’s petition for judicial
review under APA section 2001.176(b)(2). 
D.      Service of Copy of Petition not Jurisdictional
          The supreme court has clarified that compliance with section 2001.176(b)(2)
is mandatory, but that service of a copy of the petition for judicial review, rather than
service of citation, suffices to comply with section 2001.176(b)(2). See Sierra Club
II, 70 S.W.3d at 814. In affirming the Austin Court of Appeals on that ground, the
supreme court let stand the appellate court’s disposition, which reversed the trial
court’s dismissal of the cause for lack of jurisdiction for the Sierra Club’s failure to
serve citation on all parties of record before the Texas Natural Resource Conservation
Commission (TNRCC). See Sierra Club I, 26 S.W.3d at 688. Compliance with the
service requirements of section 2001.176(b)(2) is, therefore, mandatory, but not
jurisdictional. Id. 
          In concluding that mandatory compliance with service requirements was not
jurisdictional, the Third Court of Appeals applied the supreme court’s holding in
Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000). See Sierra Club I, 26
S.W.3d at 686-87. Kazi held that the foreign-citizen plaintiffs’ burden to demonstrate
“equal treaty rights” with the United States was not a jurisdictional prerequisite but
a condition on which the plaintiffs’ right to relief depended. Kazi, 12 S.W.3d at 76-77. After Kazi, failure of a party to comply with statutory requirements will no longer
categorically constitute a jurisdictional bar to review of an agency determination. See
Kazi, 12 S.W.3d at 76 (overruling Mingus v. Wadley, 285 S.W. 1084 (Tex. 1926)). 
Rather, lack of compliance with certain statutory prerequisites will affect only the
plaintiff’s right to relief. See Kazi, 12 S.W.3d at 76. By removing the jurisdictional
bar as an absolute, while acknowledging that the bar sometimes will and sometimes
will not apply, the court implicitly recognized that some statutory prerequisites will
remain jurisdictional. See id. 
          The opinion of the Third Court of Appeals in Sierra Club I provides a
workable distinction between statutory requirements that trigger jurisdictional
implications after Kazi and those that do not. See Sierra Club I, 26 S.W.3d at 688.
If a statutory requirement “defines, enlarges, or restricts the class of cause the [trial]
court may decide or the relief the court may award,” the requirement is jurisdictional.
Id. If it does none of these, the statutory requirement is but a condition on which the
plaintiff’s right to relief depends. See id. at 687; see also Hill v. Bd. of Tr., 40 S.W.3d
676, 679 (Tex. App.—Austin 2001, no pet.) (applying Sierra Club I test to analyze
whether requirement to file timely motion for rehearing with agency was
jurisdictional or pertained solely to plaintiff’s right to relief and concluding
requirement was jurisdictional).
          In analyzing whether the Sierra Club’s procedural prerequisite to serve all
parties to the TNRCC hearing was jurisdictional and concluding that it was not, the
Third Court focused on the nature of relief available under the APA in the Sierra
Club’s request for judicial review of the TNRCC ruling. Sierra Club I, 26 S.W.3d at
688. As the court noted, and as we have addressed above, the APA limits the trial
court’s authority on petitions for judicial review of agency orders to final decisions
in contested cases, under the substantial-evidence test, and based solely on the record
of the contested-case hearing. Id. (construing Tex. Gov’t Code Ann. § 2001.171). 
Likewise, the trial court cannot render judgment on questions committed to the
agency’s discretion but may only (1) affirm the agency order in whole or in part or
(2) reverse the order or remand the case to the agency for further proceedings. Id. 
(construing Tex. Gov’t Code Ann. § 2001.174). Because these statutory provisions
define and restrict the class of causes the trial court may decide on petition for
judicial review, trial courts have no authority, and thus no jurisdiction, to exceed the
limited grant of authority to waive the agency’s immunity authorized by sections
2001.171 and 2001.174 of the APA. See Schutz, slip op. at 20. 
          By contrast, section 2001.176(b)(2) of the APA, which requires service of a
copy of the petition for judicial review on all parties of record in the contested case,
does not define, enlarge, or restrict what the trial court may decide on petition for
judicial review. See Sierra Club I, 26 S.W.3d at 688; Tex. Gov’t Code Ann. §
2001.176(b)(2); see also Sierra Club II, 70 S.W.3d at 814 (clarifying that APA
section 2002.176(b)(2) controlled service on parties other than TNRCC defendant,
which required actual service of citation under Solid Waste Disposal Act). 
          We agree with the Third Court of Appeals that the failure of a petitioner
seeking judicial review to serve a party to a contested case with a copy of the petition
for judicial review does not deprive the trial court of jurisdiction and that a trial court
errs by dismissing the petition on those grounds. See Sierra Club I, 26 S.W.3d at
688. We therefore hold that Helton’s failure to serve Harris with a copy of Helton’s
petition for judicial review, as mandated by section 2001.176(b)(2) of the APA, did
not deprive the trial court of jurisdiction. Accordingly, the trial court properly
rejected the commission’s and Tri-Union’s jurisdictional challenges to the trial
court’s authority to consider Helton’s petition for judicial review.
E.      Helton Did not Prove a Right to Relief
          By not serving Harris with a copy of the petition for judicial review, as
mandated by section 2001.176(b)(2) of the APA, however, Helton did not meet a
necessary condition on which its right to seek judicial review of the commission’s
order depended. Accordingly, Helton failed to prove its right to relief. See Kazi, 12
S.W.3d at 76; Sierra Club I, 26 S.W.3d at 688. Because Helton did not prove its right
to the relief it sought from the trial court, the court had no choice but to affirm the
order of the commission and did affirm that order. Tex. Gov’t Code Ann. §
2001.174; see Kazi, 12 S.W.3d at 76-77. We therefore hold that the trial court
properly affirmed the final order of the commission. 
F.      Commission and Tri-Union Not Required to File Notice of Appeal 
          Helton contends that we may not address the commission’s and Tri-Union’s
Kazi-based challenges because neither filed a notice of appeal. See Tex. R. App. P.
25.1(c). Helton relies on rule 25.1(c), this Court’s opinion in Dean v. Lafayette Place
(Section One) Council of Co-Owners, Inc., 999 S.W.2d 814 (Tex. App.—Houston
[1st Dist.] 1999, no pet.), and Quimby v. Tex. Dep’t of Transp., 10 S.W.3d 778 (Tex.
App.—Austin 2000, pet. denied). 
          Rule 25.1(c) requires that a party “who seeks to alter the trial court’s judgment
or appealable order must file a notice of appeal.” Tex. R. App. P. 25.1(c). In Quimby,
the Third Court of Appeals construed an argument the Department of Transportation
raised as a cross-point in response to Quimby’s appeal and concluded the argument
sought to alter the trial court’s judgment. 10 S.W.3d at 781. Because the Department
sought to alter the judgment, but had not filed a notice of appeal, the court of appeals
refused to consider the Department’s cross-point. Id. 
          In Dean, this Court distinguished cross-points that require a separate notice of
appeal from those that merely seek to raise alternate grounds opposing recovery by
the appealing party. 999 S.W.2d at 817. We noted that rule 25.1(c) precludes
granting any party who does not file a notice of appeal “more favorable relief than did
the trial court except for just cause.” Dean, 999 S.W.2d at 817 (quoting Tex. R. App.
P. 25.1(c)). Because the cross-point argument presented by the appellee board in that
case did not seek to alter the trial court’s judgment and thus did not seek greater relief
than the trial court awarded, but merely presented additional grounds for affirming
the judgment, we concluded that the board was not required to file its own notice of
appeal. Id. at 818. Accordingly, we addressed the merits of the board’s cross-point. 
          In the instant case, we have concluded, in response to contentions raised by the
commission and Tri-Union, that the trial court had no choice but to affirm and thus
properly did affirm the commission’s final order. The commission’s and Tri-Union’s
contentions do not seek to alter the trial court’s judgment, but present an additional,
alternative ground in support of the trial court’s decision to affirm the commission’s 
order. Accordingly, the commission and Tri-Union were not required to file separate
notices of appeal to raise the contentions that we have concluded are dispositive of
Helton’s appeal. 
          We overrule Helton’s three issues.
Conclusion
          We affirm the judgment of the trial court.
 
 
Elsa Alcala
                                                                        Justice
 
Panel consists of Justices Hedges, Jennings, and Alcala.