Opinion issued November 9, 2006









     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01087-CV




HARRIS COUNTY, TEXAS, Appellant

V.

CHERYL NORRIS, Appellee




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2003-01307




O P I N I O N

          In this wrongful termination suit, a jury found that Harris County, Texas (“the
County”) wrongfully terminated appellant, Cheryl Norris, after she attempted to
report abuse of a child to her supervisor. In three related issues, the County argues
that (1) the trial court erred in denying its motion for directed verdict, (2) there was
legally insufficient evidence to support the jury’s finding that Norris’s report of abuse
was made in good faith and was a cause of the County’s decision to terminate her
when it did, and (3) the trial court erred in denying the County’s motion for judgment
notwithstanding the verdict. Norris brings a cross-point in which she contends that
the trial court erred in denying reinstatement. We affirm. 
Background
          On November 12, 2002, Norris, a caseworker with the Harris County Juvenile
Probation Department, was stationed at the Burnett-Bayland Reception Center
(“BBRC”). She testified that her supervisor, Melissa Watson, requested that she
investigate a possible incident involving G.G., one of the juvenile residents at BBRC
that had occurred during the intake procedure. Norris had twice attempted to contact
Antonio Valle, the supervisor on duty at the time of the alleged incident, but he told
her that he did not have time to discuss it, but would discuss it later. Valle told Norris
that there were no reports of the incident. When Norris told Watson that there were
no reports, Watson instructed her to talk to G.G. G.G., who was initially reluctant to
speak with Norris,


 ultimately told her that, during the intake process, he had sat
down, contrary to instructions given by the guard, because he was feeling sick. The
guard lifted G.G.’s arms up behind his back in a police hold until he was forced to
stand on his tiptoes, then took him into the hallway and “slammed” him on the ground
five or six times. G.G. was then moved to seclusion in handcuffs and shackles. After
G.G. asked to speak to a supervisor, Valle came into the room. Valle told G.G. that,
if G.G. did not write a grievance concerning the matter, Valle would not need to write
a report saying that G.G. assaulted a staff member. Norris testified that G.G. “knew
that was a threat to keep him [in detention] longer and he just wanted to go home. .
. . He was scared he was going to have to stay longer if he reported it so he didn’t.” 
          While she was talking with G.G., Norris saw Watson walk by. She asked her
to “Come here, I want you to hear this first hand, it’s bad.” G.G. proceeded to relay
the “slamming” and the threat that had taken place. Watson told Norris to get
statements and to see if there were any witnesses. Norris testified that, while she was
taking the statements of G.G. and another resident in BBRC, Valle “showed up” and
told her that “we are going to take over the investigation.” The discussion between
Valle and Norris was confrontational, and Valle testified that Norris became
“argumentative” and “refused to follow an administrative directive.” 
          Valle testified that statements from residents must be collected by a supervisor
like himself or Watson; therefore, it was improper for Norris to be taking statements.


 
Norris, on the other hand, told Valle that he should not be involved in investigating
an incident in which he was implicated. Norris asked Valle to page Watson, her
immediate supervisor, but Valle did not know the number, and he refused to get the
number from his office. 
          Valle asked Norris for the reports that she had collected on the incident, and
Norris refused to give him the reports. Valle ultimately notified the police to
investigate the alleged abuse of G.G.


 
          The next day, Valle reported Norris’s refusal to comply with his administrative
directives to the superintendent of the BBRC, Terry Snow. Statements were taken
from all involved, and, one week later, Norris was terminated because of the “Valle
incident.” Norris sued the County pursuant to the Texas Whistleblower Act


 and
alternatively pursuant to Texas Family Code section 261.110, alleging that she was
terminated for attempting to report abuse of a child to her supervisor. At the
conclusion of trial, the jury was asked several jury questions including
          QUESTION NUMBER 1
Was Cheryl Norris’s report of abuse, if any, made in good faith and a
cause of Harris County’s terminating Cheryl Norris when it did?
 
“Good faith” means that (1) Cheryl Norris believed that the
conduct reported was a violation of law, and (2) her belief was
reasonable in light of her training and experience.

                    Answer “Yes” or “No.”

                    Answer: (Yes)
 
If your answer to Question 1 is “Yes,” then answer the following
question. Otherwise do not answer the following question.

          QUESTION NUMBER 2
 
Do you find from a preponderance of the evidence that Harris County
would have terminated Cheryl Norris when it did even if she had not
made a report of a possible violation of law?

                    Answer “Yes” or “No.”

                    Answer: (No)

The jury also found that Norris sustained actual damages of $202,000, and the parties
stipulated to attorneys’ fees in the sum of $15,000. The trial court denied the
County’s motion for directed verdict and judgment notwithstanding the verdict
(“JNOV”).
No Evidence
          In three related issues, the County argues that (1) the trial court erred in
denying its motion for directed verdict, (2) there was legally insufficient evidence to
support the jury’s finding that Norris’s report of abuse was made in good faith and
was a cause of the County’s decision to terminate her when it did, and (3) the trial
court erred in denying the County’s motion for JNOV.
Standard of Review
          A trial court may “disregard any jury finding on a question that has no support
in the evidence” and render a judgment notwithstanding a jury’s verdict “if a directed
verdict would have been proper.” Tex. R. Civ. P. 301. In regard to the County’s
no-evidence issues, we note that, when a party without the burden of proof challenges
the legal sufficiency of the evidence, we consider all of the evidence in the light most
favorable to the prevailing party, indulging every reasonable inference in that party’s
favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285–86
(Tex. 1998); Ned v. E.J. Turner & Co., 11 S.W.3d 407, 408 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied). If there is more than a scintilla of evidence to support the
challenged finding, we must uphold it. Formosa Plastics Corp. USA v. Presidio
Eng’rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). When the evidence
offered to prove a vital fact is so weak as to do no more than create a mere surmise
or suspicion of its existence, the evidence is no more than a scintilla and, in legal
effect, is no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004)
(quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). However, if
the evidence supplies some reasonable basis for differing conclusions by reasonable
minds as to the existence of a vital fact, then there is legally sufficient evidence. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). The traditional scope of
review does not disregard contrary evidence if there is no favorable evidence, or if
contrary evidence renders supporting evidence incompetent or conclusively
establishes the opposite. City of Keller v. Wilson, 168 S.W.3d 802, 810–11 (Tex.
2005). Evidence can be disregarded whenever reasonable jurors could do so, an
inquiry that is necessarily fact-specific. Id. at 811.
Directed Verdict
          In issue one, the County argues that the trial court erred in denying its motion
for directed verdict.
          By statute, professionals are required to report suspected acts of child abuse or
neglect. Tex. Fam. Code Ann. § 261.101(b)(Vernon 2002). Section 261.110(b) of
the Texas Family Code provides that an employer may not terminate the employment
of a person who is a professional and who in good faith reports child abuse to the
person’s supervisor. Tex. Fam. Code Ann. § 261.110(b) (Vernon 2002). The statute
does not define the term “reports child abuse.” A public employee who alleges a
violation of Section 261.110 may sue the employing state or local governmental
entity for relief provided for in the section, and sovereign immunity is waived to the
extent of liability created by the section. Tex. Fam. Code Ann. § 261.110(f) (Vernon
2002). The employee has the burden of proof, except that there is a rebuttable
presumption that the employment was terminated for reporting abuse if the
termination occurs before the 61st day after the date on which the employee made a
report in good faith. See Tex. Fam. Code Ann. § 26.110(i) (Vernon 2002). 
          The County filed a written Motion for a Directed Verdict and also argued its
motion to the trial court. During the hearing, the County contended that “in this case
there’s been no evidence that the plaintiff made a report of child abuse to the
supervisor or any other entities listed in the statute. . . . The report was made by the
juvenile to the supervisor, not by the plaintiff and, so we submit there’s no evidence
of making a report.” The County continued that “the evidence does not meet the
causation standard here since the – it’s essentially a but-for type causation.” On
appeal, the County argues that, because Norris did not disclose information tending
to directly or circumstantially prove the substance of an allegation of abuse, she did
not fall within the protection of Section 261.110. “She simply told her supervisor that
she should hear a juvenile’s story first hand and the juvenile then self-reported the
alleged abuse directly to the supervisor.” The County also contends that there is no
evidence showing a causal connection between the making of any report of child
abuse and the termination of Norris’s employment.
          It is undisputed that no report, however the term is defined, was generated
before Norris confronted G.G. about the incident, which had taken place one week
before. It is also undisputed that, after Norris spoke with G.G. and later called
Watson over to hear the first-hand account of the incident, several reports were
created. The purpose of the statute is to protect children from abuse by protecting an
employee who reports child abuse; therefore, a liberal interpretation of the report
requirement is necessary in order to achieve the purpose of the statute. See Tex. Dep’t
of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002) (in construing statute,
objective is to determine and give effect to Legislature’s intent). Furthermore,
because Norris was fired within 61 days after she made a report in good faith, the
County had the burden of rebutting the presumption that Norris was terminated for
reporting abuse. See Tex. Fam. Code Ann. § 261.110(i). To prevail on a directed
verdict, the County must have proven, as a matter of law, that it conclusively
established that Norris was fired for non-retaliatory reasons. It failed to do so. In
fact, Valle, who reported Norris for her refusal to comply with administrative
directives, was asked at trial if Norris was fired for reporting abuse, and he testified,
“I don’t know, sir.” 
          We hold that the evidence supplies some reasonable basis for differing
conclusions by reasonable minds as to the existence of a vital fact and thus presents
legally sufficient evidence to defeat a motion for directed verdict. See Chapman, 118
S.W.3d at 751. 
           We overrule issue one.
JNOV and Legal Sufficiency
          In issues two and three, the County argues that (1) there was legally insufficient
evidence to support the jury’s finding that Norris’s report of abuse was made in good
faith and was a cause of the County’s decision to terminate her when it did and (2) the
trial court erred in denying the County’s motion for judgment notwithstanding the
verdict. 
          The County filed a Motion to Disregard Jury Findings or Alternatively Motion
for JNOV. In the motions, the County contends that there was no evidentiary support
for the jury’s answers in the charge because there was “no probative evidence that
Cheryl Norris made any report in accordance with Chapter 261 of the Texas Family
Code.” The County further argues that, because the pleadings allege that Norris
“attempted to make a report and initiate an investigation of child abuse as opposed
to making a report,” the question should not have been submitted to the jury.
          The County did not ask for a definition of “report” to be included in the charge,
and it did not ask for a separate question regarding whether Norris actually made a
report as a predicate to the liability question. We must assume that, because the jury
affirmatively answered the liability question, it made an implied finding that Norris
filed a “report.”
          The parties agree on the basic facts of the case. They simply disagree whether
Norris’s motioning to Watson and G.G.’s recitation of the events to Watson
constituted “a report of abuse.” Absent an instruction in the charge defining the term,
we cannot usurp its implied finding. The County also contends that there “is no
evidence showing a causal connection between the making of any report of child
abuse and the termination of the Plaintiff’s employment.”



          Norris unequivocally testified that she reported or caused to be reported the
incident of abuse. The jury refused to find “from a preponderance of the evidence
that Harris County would have terminated Cheryl Norris when it did even if she had
not made a report of a possible violation of law.” Norris was not required to prove
that the filing of the report was the only cause of her termination. In fact, she simply
needed to defeat the above-quoted statement. Once she created a fact question, it was
the County’s burden to prove from a preponderance of the evidence that Norris’s
alleged insubordination was the sole cause of her termination. It failed to do so.
          In the statement she prepared and filed at the time of the incident, Norris
relayed the events surrounding her alleged insubordination. She stated that Valle
demanded that she give him the statements that she had taken from the juveniles who
witnessed the incident with G.G. She stated that she responded, 
“Sir, as soon as we call [Watson] or copy them, I’ll give them to you.” 
He said, “So you’re refusing me, a Supervisor.” I said, “Sir, I’m not
refusing, I’m asking if we can call my Supervisor before we take any
action.” He said I’m going to ask you again,” and did. I repeated my
request to call [Watson] first please. He said, “Okay, so you’ve refused
a Supervisor twice.”

Norris’s statement goes on to reflect that, after Valle left the room, Norris attempted
to page Watson, and then Norris attempted to make the copies of the statements. The
copier was on “energy saver mode,” so she could not make copies immediately. Valle
returned while Norris was waiting to make copies, and Watson responded to the page.
While Valle was listening to her conversation with Watson, Norris relayed over the
phone the events of the evening. Watson “sounded surprised” and told Norris “to tell
Valle that she had instructed [Norris] to get the kids’ statements.” Valle refused to
talk with Watson on a speaker phone. Norris made copies of the statements, gave
them to Valle, and left the building. When specifically asked at trial, Valle was
uncertain if Norris was fired for reporting abuse. Norris contends that she was fired
for reporting the abuse and that the alleged “insubordination” was the result of an
easily explained attempt to contact her supervisor while conducting an investigation. 
          We hold that there is more than a scintilla of evidence to support the challenged
finding and, accordingly, overrule issues two and three. See Formosa Plastics Corp.
USA, 960 S.W.2d at 48.
Reinstatement
          In her sole cross point, Norris contends that the trial court erred “in denying her
reinstatement to her former position or a comparable position in terms of
compensation, benefits, and other conditions of employment and reinstatement of
fringe benefits and seniority rights lost because of her wrongful termination.”
          Texas Rule of Appellate Procedure 25.1 (c) requires that a party “who seeks
to alter the trial court’s judgment or appealable order must file a notice of appeal.” 
Tex. R. App. P. 25.1 (c); Helton v. Railroad, Comm’n of Texas, 126 S.W.3d 111, 119
(Tex. App.—Houston [1st Dist.] 2003, pet. denied). Harris County filed its notice of
appeal on October 13, 2004, and Norris’s notice of appeal was due within 14 days
thereafter. See Tex. R. App. P. 26.1(d). Norris’s notice of appeal was not filed until
December 13, 2004. Accordingly, we dismiss her appeal for being untimely filed. 
ConclusionWe affirm the trial court’s judgment.


                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.