Opinion issued September 20, 2007

 

 









In The

Court of Appeals

For The

First District of Texas

_______________


NO. 01-06-00529-CV

_______________


MHCB (USA) LEASING AND FINANCE CORP. and VALERO REFINING-TEXAS, L.P., Appellants


V.


GALVESTON CENTRAL APPRAISAL DISTRICT and GALVESTON
CENTRAL APPRAISAL DISTRICT REVIEW BOARD, Appellees


* * *


GALVESTON CENTRAL APPRAISAL DISTRICT and GALVESTON
CENTRAL APPRAISAL DISTRICT REVIEW BOARD, Appellants


V.


MHCB (USA) LEASING AND FINANCE CORP. and VALERO REFINING-TEXAS, L.P., Appellees

 


On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 04CV1083

 


O P I N I O N

 In these interlocutory appeals, MHCB (USA) Leasing and Finance Corp.
("MHCB") and Valero Refining-Texas, L.P. ("Valero Refining") (together, "the
protesting parties"), who were plaintiffs below, and Galveston Central Appraisal
District ("the District") and Galveston Central Appraisal District Review Board ("the
Board"), who were defendants below, each appeal from the trial court's order
granting in part and denying in part the District's and Board's joint plea to the
jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp.
2006). We determine (1) whether either or both of the protesting parties lacked
standing to protest, and to seek judicial review of, the District's and Board's
complained-of actions and (2) whether the trial court lacked jurisdiction over the
protesting parties' requests for declaratory and injunctive relief when, at their core,
those claims sought a determination of whether the District had the statutory authority
unilaterally to rescind an appraisal agreement between itself and the protesting
parties. We reverse the order and remand the cause for the trial court to render an
order dismissing certain claims asserted by MHCB and to deny the District's and
Board's jurisdictional plea against certain of the claims of Valero Refining.


Background


 This dispute concerns the 2004 appraised value, for ad valorem tax purposes,
of Valero Refining's Delayed Coker Unit ("the Coker Unit"), which is a refinery unit
located in Texas City, Texas. 

 Valero Refining did not always own the Coker Unit. Before March 2004,
MHCB owned the Coker Unit, and Valero Refining leased the unit from MHCB. 
Under its lease agreement with MHCB, Valero Refining was contractually obligated
to pay property taxes on the Coker Unit. It was not until March 9, 2004 that Valero
Refining purchased the Coker Unit from MHCB. 

 In December 2003, while MHCB still owned the Coker Unit, Robert T. Lehn,
working for a private appraisal company on behalf of the District's chief appraiser, (1)
wrote Valero Refining to begin the 2004 appraisal process for Valero Refining's
Galveston County facilities, including the Coker Unit that it rented. Specifically,
Lehn wrote to Roy G. Martin Jr., who was the vice president of Valero Corporate
Services Company ("Valero Corporate"), the general partner of Valero Refining. 
Both Valero Corporate and Valero Refining were subsidiaries of Valero Energy
Corporation ("Valero Energy").


 The appraisal process for the Coker Unit that had begun in December 2003 was
part of a larger appraisal of what appears to have been all of the Valero Energy
corporate family's Galveston County industrial properties. Starting in March 2004,
after Valero Refining had purchased the Coker Unit, Lehn and Trey Novosad, the
Director of Ad Valorem Tax for Valero Energy, worked together on the appraisal
values for all of the pertinent properties in Galveston County, including Valero
Refinery's Coker Unit. In early May 2004, Lehn and Novosad reached an agreement
to appraise the Valero Refinery Coker Unit at $60,525,090 for the 2004 tax year ("the
Appraisal Agreement"). The protesting parties provided evidence that the Appraisal
Agreement was memorialized in two documents: in an initial appraisal worksheet, in
which Lehn had hand-written the words "MHCB--Delayed Coker Unit 60±," and in
a second appraisal worksheet, which in typed print listed the "Coker Unit at Valero
Refining" as having a "grand total" value of $60,525,090.00.

 On May 18, 2004, the District issued a notice of appraised value ("the first
notice"), appraising the Coker Unit at $60,525,090. The protesting parties did not
contest the appraised value set by the first notice, even though the new value
significantly exceeded the Coker Unit's 2003 appraised value, because the 2004
appraised value was consistent with that required by the Appraisal Agreement.

 Within days of the first notice's issuance, Lehn contacted Novosad to explain
that the Texas City appraisal office was "under pressure" to explain certain appraisal
figures. Then, on June 14, 2004, the Board held a meeting at which the District's
chief appraiser submitted the 2004 records for all industrial accounts, including those
for the Coker Unit. At that meeting, the Board appears to have questioned the
$60,525,090 appraisal value for the Coker Unit because, shortly thereafter, on June
21, 2004, Lehn contacted Novosad to advise him that

 [s]ome are laughing at the values I put on Y'all and on BP in Tx City,
but more are very unhappy--saying anyone else would've put more on
you two. I'm getting threatened by HCAD protests being blamed on
equity and I'm getting what appears to be a possible tax unit challenge
from Tx City--it's your new Coker [Unit] . . . .


On June 22, 2004, Lehn contacted Novosad to inform him that the 2004 appraisal for
the Coker Unit would have to be increased by $100 million because of "information
being brought to light" that Lehn "hadn't properly considered," among other things. 
That same day, the District issued a revised notice of appraised value for the Coker
Unit ("the second notice"), which appraised the Coker Unit at $193,370,890. The
record does not show that the second notice was issued upon order of the Board;
rather, the evidence indicates that the second notice issued before any protest had
been filed concerning the 2004 appraisal of the Coker Unit and that the second notice
may have been based on revised appraisal figures submitted to the District by Lehn.




 The protesting parties filed a joint protest of the District's 2004 reappraisal and
second notice on July 19, 2004. (2) After having held a hearing, the Board denied the
protesting parties' protest in August 2004, at which time the Board also ordered the
District's chief appraiser to correct the appraisal rolls to reflect an appraised value of
$240,000,000 for the Coker Unit for 2004. The protesting parties then filed suit for
judicial review of the Board's decision in the protest and asserted claims, within the
same suit, against the District based on its unilaterally having rejected the Appraisal
Agreement.

 In their live petition, the protesting parties asserted two alternative sets of
allegations. Primarily, they alleged as follows:

 that the District had acted "outside its statutory authority" and
"abused its discretion" by having issued the second notice in
violation of the Appraisal Agreement, rendering the second notice
invalid, and


 "because [the District] acted outside its authority" in rejecting the
Appraisal Agreement, the Board also "acted outside its authority
and abused its discretion by denying [the protesting parties']
protest regarding the invalidity and void character" of the second
notice that the District issued after having rejected the Appraisal
Agreement.


We will refer to these allegations as the protesting parties' "Primary Allegations." 
In conjunction with the Primary Allegations, the protesting parties sought
declarations that

 the Appraisal Agreement was a "binding contract" for an
appraisal value of $60 million;


 the District's second notice of the appraised value was void;


 the District's chief appraiser had abused his discretion and
exceeded his authority by having issued the second notice, and
that notice was thus "invalid and void";


 the District had "breached its contractual agreement with [the
protesting parties]";


 the Board had "exceeded its authority" by having taken any action
that resulted from the second notice or increased the amount
appraised in the first notice; and


 the District and Board were estopped from valuing the Coker Unit
at more than the value in the Appraisal Agreement.


The protesting parties also sought injunctive relief in the following forms:


 "enforcement" of the Appraisal Agreement by correcting the 2004
tax rolls to reflect the value for the Coker Unit reached in the
Appraisal Agreement;


 "relief from the Second Notice and [the District's] assessment of
taxes" based upon the second notice, including the cancellation
and setting aside of the Board's pertinent final order; and 


 "reimbursement of other fees and fines that have accrued and/or
have been assessed against [the protesting parties] because of [the
District's and Board's] improper and void conduct."


The protesting parties further sought attorney's fees and court costs.

 Alternatively, in the event that the trial court determined that the second notice
and the Board's final determination of appraised value were valid, the protesting
parties alleged that the District's and Board's actions in reappraising the Coker Unit's
value were unfair and discriminatory because of a "fundamentally erroneous and
unlawful plan, method and formula of valuation and assessment" that resulted in an
excessive valuation that was unequal with the values assessed for comparable
properties. The protesting parties further alternatively alleged that the resulting
appraisal was "an unlawful levy" that created an "illegal lien" on the Coker Unit. We
will refer to these allegations as the protesting parties' "Alternative Allegations." In
conjunction with their Alternative Allegations, the protesting parties alleged that the
equalized value of the Coker Unit was approximately $37,732,240, sought injunctive
relief to have the appraisal rolls corrected to reflect "an appraised value that is equal
and uniform as required by law," and sought attorney's fees.

 The District and Board filed a joint plea to the jurisdiction, challenging both
the protesting parties' Primary Allegations, based on the Appraisal Agreement, and
their Alternative Allegations, alleging that the reappraisals were excessive and
unequal. (3) As for the protesting parties' Primary Allegations, which were based on the
Appraisal Agreement, the District and Board argued that, as political subdivisions of
the State (in the Board's case, as an administrative agency), they were immune from
suit both for breach of contract (as they described the Appraisal Agreement) and for
declarations relating to the validity of the second notice and the reappraisals. 
Specifically, the District and Board argued that the Property Tax Code provided the
exclusive means to challenge their actions relating to appraisals and that those
statutory provisions provided for only limited judicial review, not for suits for breach
of contract or for the type of declaratory relief that the protesting parties sought. 
Therefore, the District and Board argued, governmental immunity from suit shielded
them from all of the protesting parties' Primary Allegations. 

 As for the protesting parties' Alternative Allegations, alleging that the
reappraisals were excessive and unequal, the District and Board argued that the
protesting parties lacked standing to seek judicial review under the Property Tax
Code either because (1) Valero Refining's parent corporation, Valero Energy, which
had not properly been designated as the agent of either protesting party, had filed the
appraisal protest or, alternatively, (2) even if MHCB had standing, Valero Refining
did not.

 The protesting parties responded, as to their Primary Allegations based on the
Appraisal Agreement, that the declaratory relief that they sought did not require
waiver of immunity from suit because it did not seek damages (although the
protesting parties sought recovery of court costs and attorney's fees) and because it
sought to establish whether the District and Board acted outside their statutory
authority. Specifically, the protesting parties argued that suits challenging
governmental-unit or agency action that falls outside of the unit's or agency's
statutory authority--which the protesting parties alleged that the failure to adhere to
the Appraisal Agreement was here--did not require legislative permission to proceed
and did not require exhaustion of administrative remedies (although the protesting
parties had exhausted administrative remedies anyway). The protesting parties
further argued that, although their challenge to the 2004 reappraisals was based upon
an agreement, their suit was still one challenging the appraisal value, for which the
Property Tax Code waived immunity from suit in the form of a suit for judicial
review. That is, the protesting parties argued that, because the Property Tax Code
undisputedly allowed them to maintain a suit for judicial review of their protest to
adverse appraisal decisions, and also because they sought to determine whether the
District and Board had acted illegally, it should make no difference that the basis for
their protest and for the declaratory and injunctive relief that they sought was an
appraisal agreement with the District. 

 The protesting parties then responded, as to their Alternative Allegations
alleging that the reappraisals were excessive and unequal, that (1) Valero Refining
was the owner of the Coker Unit both at the time of the Appraisal Agreement's
execution and at all pertinent times thereafter; (2) even at the time that Valero
Refining was a lessee of the Coker Unit, it was contractually obligated to pay
property taxes on the unit; and (3) the protest to the reappraisals and second notice
was filed jointly under the names of MHCB and Valero Refining, not under the name
of Valero Energy.

 The trial court granted the District's and Board's plea in part and denied it in
part. The order recited:

 IT IS HEREBY ORDERED, ADJUDGED, and DECREED that
[the protesting parties'] cause of action against [the District and Board]
for breach of contract is hereby DISMISSED for lack of subject matter
jurisdiction.


 IT IS FURTHER ORDERED that the remaining grounds asserted
in [the District's and Board's] Joint Plea to the Jurisdiction and
Supplemental Plea to the Jurisdiction relating to (1) [the protesting
parties'] claim that the [second notice] relating to the subject property
was legally invalid, and (2) concerning [the protesting parties'] failure
to follow necessary procedures for appeal and judicial review of
appraised value, (4) are DENIED.


We construe this order to have dismissed for want of jurisdiction the protesting
parties' Primary Allegations, which were based on the Appraisal Agreement, but to
have retained their Alternative Allegations, which alleged that the reappraisals were
excessive and unequal.

 Both the protesting parties and the District and Board have appealed.



Standard of Review


 A governmental unit may challenge the trial court's subject-matter jurisdiction
by filing a plea to the jurisdiction. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638
(Tex. 1999). In deciding a jurisdictional plea, a trial court considers the plaintiff's
pleadings and any evidence pertinent to the jurisdictional inquiry. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554-55 (Tex. 2000); see also Tex. Natural Res. 
Conservation Comm'n v. White, 46 S.W.3d 864, 867-68 (Tex. 2001). We review de
novo a trial court's ruling on a jurisdictional plea, construing the pleadings in the
plaintiff's favor and looking to the pleader's intent. See Tex. Natural Res. 
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Tex. Ass'n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).

The District's and Board's Appeal


 In three issues, the District and Board challenge the trial court's denial of their
jurisdictional plea asserted against what they describe as the protesting parties' "suit
for declaratory judgment."

A. The District's and Board's Appellate Challenges

 The District's and Board's appellate challenges evidence a partial
misunderstanding of the effect of the trial court's ruling. The trial court's order
dismissed the protesting parties' Primary Allegations, which included their claims for
declaratory relief based on the statute governing appraisal agreements. What the trial
court refused to dismiss were the protesting parties' Alternative Allegations, which
challenged the reappraisals as excessive and unequal and which constituted a suit for
judicial review of the District's and Board's adverse actions affecting the 2004
appraised value of the Coker Unit. Therefore, after the order, the only claims pending
before the trial court were those constituting the suit for judicial review (the
Alternative Allegations), which was not based on the Appraisal Agreement; in
contrast, the order dismissed the claims seeking declaratory and injunctive relief
based on the Appraisal Agreement (the Primary Allegations).

 Only the District's and Board's third issue challenges the protesting parties'
claims that the trial court did not dismiss: the Alternative Allegations that the
reappraisals were excessive and unequal. The District's and Board's first and second
issues, in contrast, challenge the protesting parties' Primary Allegations, which the
trial court dismissed and which ruling is favorable to the District and Board. (5) We
thus interpret the District's and Board's first and second issues as responsive
arguments to the protesting parties' appellate challenges, and for this reason, we
discuss the District's and Board's first and second issues in our discussion of the
protesting parties' appeal. For these reasons, we also overrule the District's and
Board's first and second issues, although we reach those issues' merits in our
discussion of the protesting parties' appeal. We now address the District's and
Board's third issue.

B. Standing

 In their third issue, the District and Board argue that the protesting parties did
not have standing to protest the District's 2004 reappraisal and the second notice, or
to seek judicial review of the Board's adverse ruling on that protest, because they did
not follow the Tax Code's strict protest procedures. Specifically, they argue that
either MHCB or Valero Refining--depending on which owned the Coker Unit at the
relevant time--could protest the District's complained-of actions and seek judicial
review of the Board's adverse decision on that protest, but not both parties. (6) This
issue attacks the protesting parties' standing to assert the Alternative Allegations.

 The Property Tax Code, contained within Title I of the Tax Code, provides:

 [P]roperty taxes are the personal obligation of the person who owns or
acquires the property on January 1 of the year for which the tax is
imposed . . . . A person is not relieved of the obligation because he no
longer owns the property.


Tex. Tax Code Ann. § 32.07(a) (Vernon Supp. 2006). Given that it has personal
liability for property taxes, a property owner may protest, among other matters, a
determination of the appraised value of the owner's property. Id. § 41.41(a)(1)
(Vernon 2001). The property owner may also appeal (that is, seek judicial review of)
an order of the appraisal review board determining its protest. Id. § 42.01(1)(A)
(Vernon 2001). When the property's ownership changes after January 1 of, and
before the deadline for filing a protest in, a given tax year, the new owner may pursue
a protest in the same manner as could the property owner who owned the property on
January 1 of that year. Id. § 41.412(a) (Vernon 2001).

 A property owner may, alternatively, designate a lessee or other person to act
as its agent for any purpose under the Property Tax Code relating to the owner or its
property. Id. § 1.111(a) (Vernon 2001). The designation of the owner's agent must
be in writing, must be signed by the owner (among other authorized persons), and
must also clearly indicate that the agent is authorized to act on the owner's behalf in
tax matters relating to the owner or the property. Id. § 1.111(b) (Vernon 2001). 

 If the owner or its agent does not file a tax protest, then a person leasing real
property who is contractually obligated to reimburse the property owner for property
taxes may protest the property's appraised value. Id. § 41.413(b) (Vernon 2001). 
Either the owner (or its agent) or the lessee described in section 41.413 may file a
protest, but both cannot do so. See id. 

 One who is not the owner, the owner's designated agent, or an authorized
lessee under section 41.413 lacks standing to protest an adverse appraisal decision. 
See Tourneau Houston, Inc. v. Harris County Appraisal Dist., 24 S.W.3d 907, 909
(Tex. App.--Houston [1st Dist.] 2000, no pet.) (owner or agent); see also Coastal
Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 886 (Tex.
2001) (indicating in dictum that whether one is authorized lessee under section
41.413 or is owner's designated agent under Tax Code section 1.111(a) is matter of
standing, not capacity). Lack of standing to protest an ad valorem tax appraisal
deprives a court of subject-matter jurisdiction to entertain a suit for judicial review
based on that protest because standing is a component of subject-matter jurisdiction. 
See Tourneau Houston, Inc., 24 S.W.3d at 909 (holding that trial court lacked
jurisdiction to consider suit for judicial review filed by entity that was neither owner
of property nor owner's properly designated agent); see also Texas Ass'n of Bus., 852
S.W.2d at 445-46 (holding that standing is component of subject-matter jurisdiction).

 Valero Refining became the Coker Unit's owner after January 1, 2004, but
before the deadline for filing a protest had passed--indeed, before any 2004 appraisal
had been rendered for the Coker Unit. Therefore, Valero Refining had standing to
protest the District's 2004 reappraisal and second notice. See Tex. Tax Code Ann.
§ 41.412(a). The Property Tax Code makes no provision for both the current owner,
under section 41.41, and the new owner, under section 41.412, to file a protest for the
same property in a given tax year. (7) See id. §§ 41.41(a) ("A property owner is entitled
to protest") (emphasis added), 41.412 (indicating that new property owner may file
first protest or, on application to appraisal review board, may be substituted in
pending protest for former owner). Accordingly, only Valero Refining, as the Coker
Unit's new owner that filed the first protest for the 2004 appraisal, had standing to
protest the District's and Board's actions; MHCB did not.

 We sustain the District's and Board's third issue to the extent that they
complain of MHCB's standing to protest the District's 2004 reappraisal and second
notice, to seek judicial review of the Board's adverse decision on that protest, and
thus to assert the Alternative Allegations, which concerned whether the 2004
appraisal was excessive and unequal. We overrule the District's and Board's third
issue to the extent that they complain of Valero Refining's standing to take these
actions.

The Protesting Parties' Appeal


 In their sole issue, the protesting parties challenge the trial court's granting of
the District's and Board's jurisdictional plea against, and its dismissal of, the Primary
Allegations, which were ultimately based on the Appraisal Agreement. In a nutshell,
the protesting parties assert that these allegations, which they have at times described
as a suit to enforce the Appraisal Agreement with the District, were not barred by
governmental immunity from suit for the following reasons:

 the protesting parties did not seek monetary damages, but sought
only declaratory and injunctive relief--with the exception of
attorney's fees, which were not barred by governmental immunity
from suit in a declaratory-judgment suit;


 the declarations that the protesting parties sought--that, by
having breached the Appraisal Agreement, the District and Board
acted outside of their statutory authority--did not require waiver
of governmental immunity from suit;


 the declarations that the protesting parties sought were ones to
interpret a governmental unit's or agency's authority, for which
claims governmental immunity from suit did not apply or was
waived; and


 even if governmental immunity from suit applied to their
declaratory-judgment claims, the protesting parties could
nonetheless seek enforcement of the Appraisal Agreement under
the authority of Texas A&M Univ. Kingsville v. Lawson, 87
S.W.3d 518 (Tex. 2002).


The protesting parties also argue that the relief that they sought under the Primary
Allegations was not merely redundant of that which they sought in the Alternative
Allegations in their suit for judicial review of the Board's final order.

A. The Nature of the Protesting Parties' Primary Allegations

 As for their Primary Allegations, the protesting parties sought only declaratory
and injunctive relief, plus attorney's fees and court costs, in their suit challenging the
District's and Board's reappraisals as violative of the statute governing appraisal
agreements. That is, the protesting parties sought declarations that the District and
Board exceeded their statutory authority by unilaterally rejecting the Appraisal
Agreement (the District), reappraising the Coker Unit (the District), and ordering an
even higher appraisal of the Coker Unit (the Board). 

B. Governmental Immunity From Suit

 1. Constructs of Immunity from Suit Applicable to the District

 The District is a political subdivision of the State. Tex. Tax Code Ann.
§ 6.01(c) (Vernon 2001). Governmental immunity, which is derived from the State's
sovereign immunity, shields political subdivisions of the State from suit and liability. 
Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). 

 "[G]overnmental immunity has two components: immunity from liability,
which bars enforcement of a judgment against a governmental entity, and immunity
from suit, which bars suit against the entity altogether." Id. "By entering into a
contract, a governmental entity necessarily waives immunity from liability, . . . but
it does not waive immunity from suit." Id. Instead, in suits for breach of contract and
other claims for money damages, the judiciary has consistently "'deferred to the
Legislature to waive immunity from suit, because this allows the Legislature to
protect its policymaking function.'" Id. (quoting IT-Davy, 74 S.W.3d at 854). 


 Notwithstanding the above constructs, there are certain suits that private
citizens may maintain against the State without legislative permission. For example,
private litigants may always sue the State, without legislative permission, for state
officials' violations of state law because such violations are not considered to be acts
of the State. Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 404 (Tex. 1997), superseded
by statute on other grounds as noted in Gen. Servs. Comm'n v. Little-Tex Insulation
Co., 39 S.W.3d 591, 593 (Tex. 2001). Therefore, "an action to determine or protect
a private party's rights against a state official who has acted without legal or statutory
authority is not a suit against the State that sovereign immunity bars." Id. That is,
such suits are "suits to determine a party's rights against the State," which do not
require legislative consent, rather than "suits seeking damages," which do. Id.

 Nonetheless, suits to establish a contract's validity, to enforce its performance,
or to impose its liabilities are suits against the State that are precluded by the doctrine
of immunity from suit. IT-Davy, 74 S.W.3d at 855; Tex. S. Univ. v. State St. Bank &
Trust Co., 212 S.W.3d 893, 903 (Tex. App.--Houston [1st Dist.] 2007, pet. denied). 
One may not label such a suit as one for declaratory judgment merely to avoid the
immunity-from-suit doctrine. See IT-Davy, 74 S.W.3d at 856; Tex. S. Univ., 212
S.W.3d at 903. This result obtains because the Declaratory Judgment Act ("DJA")
does not itself "extend a trial court's jurisdiction" or "change a suit's underlying
nature." Tex. S. Univ., 212 S.W.3d at 903 (citing IT-Davy, 74 S.W.3d at 855). 

 2. Constructs of Immunity from Suit Applicable to the Board

 Likewise, persons aggrieved by the action of an administrative agency, like the
Board, (8) have no absolute right to challenge that agency's action in court. Helton v.
R.R. Comm'n, 126 S.W.3d 111, 116 (Tex. App.--Houston [1st Dist.] 2003, pet.
denied). "The doctrine of sovereign immunity [from suit] is the rationale that
underlies" this prohibition: "[a] suit against a state agency is a suit against the State,
which, as sovereign, cannot be sued without its consent." Id. Therefore, for a person
aggrieved by an administrative agency's decision to sue in court, a statute must
generally allow for judicial review of the agency's decision, and one must follow that
statute's mandates. See id. 

 There are, however, some well-settled exceptions to this general rule. One
such exception is that, even in the absence of a statute that allows for judicial review,
one may challenge in court an agency action that exceeds the agency's jurisdiction. 
See Hitchcock v. Bd. of Trustees of Cypress-Fairbanks Indep. Sch. Dist., No. 01-06-00376-CV, 2007 WL 1500305, at *8 (Tex. App.--Houston [1st Dist.] May 24, 2007,
no pet.); MAG-T, L.P. v. Travis Cent. Appraisal Dist., 161 S.W.3d 617, 625 (Tex.
App.--Austin 2005, pet. denied). 

 Despite this and other exceptions to the exhaustion-of-remedies requirement,
when a statute provides a means to attack an agency's order, one may not maintain
a declaratory-judgment action that seeks remedies that are merely redundant of those
available by the statutory means. See Strayhorn v. Raytheon E-Sys., 101 S.W.3d 558,
572 (Tex. App.--Austin 2003, pet. denied). Additionally, just because an agency
determination is wrongly decided does not render that decision outside the agency's
authority (the third exception listed above): an incorrect agency determination
rendered pursuant to the agency's authority is not a determination made outside that
authority. See Williams v. Houston Firemen's Relief & Ret. Fund, 121 S.W.3d 415,
430 (Tex. App.--Houston [1st Dist.] 2003, no pet.) ("Williams does not challenge the
fact that the Fund has . . . this statutory authority. Regardless of his phrasing it in
terms of 'authority' . . . , the crux of Williams's argument is that the trustees
interpreted the statute in a way they should not have. This is a complaint of 'getting
it wrong,' not of acting outside statutory authority.") (footnote omitted); Tex. Comm'n
of Licensing & Regulation v. Model Search Am., Inc., 953 S.W.2d 289, 292 (Tex.
App.--Austin 1997, no writ). 

C. The Property Tax Code's Protest Scheme

 A statute is construed to waive a governmental entity's immunity from suit
only if the waiver is by clear and unambiguous language. Tex. Gov't Code Ann.
§ 311.034 (Vernon 2005); City of LaPorte v. Barfield, 898 S.W.2d 288, 291 (Tex.
1995). Such a statutory waiver exists in the Property Tax Code for property-owner
contests to certain appraisal decisions of appraisal review boards. That waiver takes
the form of administrative remedies to exhaust, which we set out below.

 A property owner, the owner's designated agent, (9) the owner's authorized
lessee, (10) or a person acquiring the owner's property within a certain time frame (11) may
file a protest to the appropriate appraisal review board of, among other matters not
relevant here, a determination of the appraised value of the property, an unequal
appraisal of the property, or "any other action of the chief appraiser, appraisal district,
or appraisal review board that applies to and adversely affects the property owner." 
Tex. Tax Code Ann. § 41.41(a)(1), (2), (9) (Vernon 2001). The property owner (or
others mentioned above) initiates the protest by filing a notice of protest with the
appraisal review board. Id. § 41.44 (Vernon Supp. 2006). After the filing of a notice
of protest, the appraisal review board must hold a hearing, of which it must timely
notify the protesting party. Id. § 41.45(a)-(d) (Vernon 2001); id. § 41.46 (Vernon
2001), amended by Act of May 22, 2007, 80th Leg., R.S., ch. 626, § 3, 2007 Tex.
Sess. Law Serv. ___, ___. With certain exceptions inapplicable here, in a protest of
the property's appraised value or of an unequal appraisal of the property, the appraisal
district has the burden of establishing both the property's value and the appraisal's
equality. Id. § 41.43(a), (b) (Vernon Supp. 2006). Once it has reached a decision on
the protest, the appraisal review board must issue a written order embodying its
decision. Id. § 41.47(a) (Vernon 2001).

 Within 45 days of its having received notice of a final, appealable order by the
appraisal review board on its protest, the protesting party may seek judicial review
of that order. Id. §§ 42.01(1)(A), 42.015, 42.21 (Vernon 2001). Judicial review is
by trial de novo. Id. § 42.23(a) (Vernon Supp. 2006). In that suit for judicial review,
the trial court "may not admit in evidence the fact of prior action by the appraisal
review board . . . , except to the extent necessary to establish its jurisdiction." Id. §
42.23(b) (Vernon Supp. 2006). The trial court's decision in such a suit for judicial
review may (1) fix the appraised property's value, (2) enter orders ensuring equal
treatment under the law, or (3) "enter other orders necessary to preserve rights
protected by and impose duties required by the law." Id. §§ 42.24, 42.25, 42.26
(Vernon 2001 & Supp. 2006). The protesting party who prevails in a suit for judicial
review concerning the property's appraised value, or concerning an unequal appraisal
for the property, may be awarded reasonable attorney's fees not exceeding certain
fixed amounts. Id. § 42.29 (Vernon 2001).

 With certain exceptions inapplicable here, the "procedures prescribed by this
title [the Property Tax Code] for adjudication of the grounds of protest authorized by
this title are exclusive, and a property owner may not raise any of those grounds: . . .
as a basis of a claim for relief in a suit by the property owner to arrest or prevent the
tax collection process or to obtain a refund of taxes paid." Id. § 42.09(a)(2) (Vernon
2001) (emphasis added). The failure to exhaust the Property Tax Code's exclusive,
administrative remedies deprives the trial court of jurisdiction to review most adverse
ad valorem tax decisions. See Tex. Gov't Code Ann. § 311.034 (Vernon Supp.
2006) ("Statutory prerequisites to a suit, including the provision of notice, are
jurisdictional requirements in all suits against a governmental entity."); Cameron
Appraisal Dist. v. Rourk, 194 S.W.3d 501, 502 (Tex. 2006); Midland Cent. Appraisal
Dist. v. Plains Mktg., L.P., 202 S.W.3d 469, 474-75 (Tex. App.--Eastland 2006, pet.
denied).

D. The Property Tax Code's Provisions Concerning Appraisal Agreements

 The Property Tax Code contemplates agreements between property owners and
appraisal districts' chief appraisers. The Code first mentions such appraisal
agreements in its general provisions relating to the appointment of agents to represent
the property owner in certain circumstances:

 (e) An agreement between a property owner or the owner's agent and
the chief appraiser is final if the agreement relates to a matter:


 (1) which may be protested to the appraisal review board or on
which a protest has been filed but not determined by the board;
. . . 


Tex. Tax Code Ann. § 1.111(e)(1) (Vernon 2001) (emphasis added). Given our
standard of review, we must assume that section 1.111(e)(1) governed the Appraisal
Agreement here because that agreement concerned a matter (i.e., the appraised value
for the Coker Unit) that could have been protested to the Board. (12) See id.; see also
id. §§ 41.01(a)(1) (Vernon 2001) (providing for appraisal review boards to determine
property owners' protests), 41.41(a)(1) (allowing for owner's protest of property's
appraised value). Section-1.111(e) agreements are final, even without approval or
adoption by the appraisal board. See Tex. Tax Code Ann. § 1.111(e)(1); BPAC Tex.,
LP v. Harris County Appraisal Dist., No. 01-03-01238-CV, 2004 WL 2422033, at *3
(Tex. App.--Houston [1st Dist.] Oct. 28, 2004, no pet.) (mem. op.).

 In fact, the Property Tax Code precludes an appraisal review board from even
reviewing such agreements. "In 1993, the Legislature amended section 1.111(e) by
deleting the previous requirement that the Board must approve of the agreement
before it became final." Sondock v. Harris County Appraisal Dist., No. 14-06-00676-CV, 2007 WL 1557424, at *3 (Tex. App.--Houston [14th Dist.] May 31, 2007, no
pet.) (citing Act of May 28, 1989, 71st Leg., R.S., ch. 796, § 2, 1989 Tex. Gen. Laws
3591, 3591, amended by Act of May 30, 1993, 73rd Leg., R.S., ch. 1031, § 1, 1993
Tex. Gen. Laws 4440, 4440 (current version at Tex. Tax Code Ann. § 1.111(e))). 
By making this change, the Legislature "intended to make it easier for parties to reach
agreements in the event of a dispute involving taxable property." Id. Therefore,
under the current statutory scheme, an appraisal review board may determine property
owners' protests generally, (13) but it "may not review or reject an agreement between
a property owner or the owner's agent and the chief appraiser under Section
1.111(e)." Tex. Tax Code Ann. § 41.01(b) (Vernon 2001); see Matagorda County
Appraisal Dist. v. Coastal Liquids Partners, L.P., 165 S.W.3d 329 331 (Tex. 2005)
(noting, in dictum, that appraisal review board "has no authority to change a
settlement reached by a taxpayer and the chief appraiser"). 

 The result of the above statutes is two-fold. First, appraisal agreements
between property owners and chief appraisers are final and cannot be reviewed or
rejected by appraisal review boards. See Tex. Tax Code Ann. §§ 1.111(e), 41.01(b). 
Second, the Property Tax Code allows a property owner to seek judicial review of
only limited types of orders, including one by the appraisal review board determining
the owner's protest. Id. § 42.01(1)(A). But because an appraisal review board cannot
review a section-1.111(e) agreement, it necessarily cannot render an order resolving
a protest based on a review of that agreement. See id. § 41.01(b). If the appraisal
review board cannot render an order resolving a protest based on a review of an
appraisal agreement, then the property owner cannot file a suit for judicial review
under Tax Code chapter 42 (which, generally speaking, allows judicial review of
board orders) of matters relating to an appraisal agreement. See BPAC Tex., LP, 2004
WL 2422033, at *3 (concluding that taxpayer was not deprived of due process by
being precluded from seeking section 42.01(1)(A) judicial review of board's order
setting property's appraised value at value to which taxpayer had agreed under
section 1.111(e): that order was not one "determining a protest by the property
owner," from which section 42.01(1)(A) allowed review, because the section-1.111(e)
agreement became final without board's approval); accord Sondock, 2007 WL
1557424, at *3. That is, the Property Tax Code makes such section-1.111(e)
agreements final and not subject to protest by the property owner or subject to a
property owner's statutory suit for judicial review under chapter 42. See Tex. Tax
Code Ann. § 41.01(b); BPAC Tex., LP, 2004 WL 2422033, at *3; Sondock, 2007 WL
1557424, at *2-3.


E. Analysis

 1. Whether the Protesting Parties' Primary Allegations Are Contract
Claims that Sovereign Immunity from Suit Bars


 The protesting parties implicitly recognize that Tax Code section 42.01 does
not provide for suit for judicial review of the Appraisal Agreement itself because they
do not assert that their Primary Allegations, which are based on the Appraisal
Agreement, are part of their statutory suit for judicial review. Neither have the
protesting parties argued that the Property Tax Code otherwise waived governmental
immunity from suit for their Primary Allegations. Rather, they have consistently
argued that their Primary Allegations--despite having their genesis in the Appraisal
Agreement--were claims to which governmental immunity from suit (and the
requirement to exhaust administrative remedies) did not apply. That is, the protesting
parties have attempted to show jurisdiction over their Primary Allegations by
demonstrating that those allegations fit into an exception to governmental immunity
from suit and the exhaustion-of-remedies requirement derived from it--specifically,
that the District, by reappraising the Coker Unit and issuing the second notice in
violation of the Appraisal Agreement, and the Board, by reappraising the Coker Unit
in violation of the Appraisal Agreement that the District could not reject, acted
outside their statutory authority. See Fed. Sign, 951 S.W.2d at 404; Helton, 126
S.W.3d at 116.

 In response, the District and Board first argue that the protesting parties cannot
avail themselves of a declaratory-judgment action merely to create jurisdiction that
would otherwise not exist in the trial court. Specifically, the District and Board argue
that the protesting parties' lawsuit is merely a suit for breach of contract and for
"damages" (in the form of lessened tax liability)--both of which claims are barred by
governmental immunity from suit--disguised as a suit for declaratory relief. Among
other things, the District and Board argue that

 [i]t is clear from [the protesting parties'] pleadings that they are not
simply seeking a determination that [the District] exceeded its authority
in issuing the Second Notice. Rather, they are seeking a determination
that [the District] exceeded its authority by issuing the Second Notice
due to the existence of a purported contract. Thus, [the protesting
parties] are seeking declarations that a contract exists and that by acting
contrary to the alleged contract, [the District and Board] exceeded their
statutory authority. . . . [The protesting parties'] claim that [the District]
acted outside of its statutory authority in issuing the Second Notice is in
truth an impermissible attempt to validate and enforce a contract
against [the District and Board] . . . .


(Emphasis added.)

 We agree with the protesting parties that their Primary Allegations do not
implicate governmental immunity from suit and that, therefore, no waiver of
immunity from suit is required to maintain them. 

 Let us begin at the beginning. The District and Board (and occasionally even
the protesting parties) have characterized the Appraisal Agreement as a "contract." 
It is not: it is a statutory agreement. A contract requires, among other things,
consideration, which is mutuality of obligation or a bargained-for exchange of
promises. See Fed. Sign, 951 S.W.2d at 408-09. Not so an appraisal agreement
under section 1.111(e): such an agreement requires only "'the act of agreeing;
harmony of opinion; accord.'" Sondock, 2007 WL 1557424, at *2 (quoting Am.
Heritage Dict. of the English Language (4th ed. 2006)). 

 This distinction is important because, in the typical situation in which a private
party contracts with a governmental unit, the former agrees to provide goods or
services for which the latter agrees to pay or to tender something of value in return. 
This does not occur with an appraisal agreement. Virtually all of the authority on
which the District and Board rely involves the typical contract between a private
entity and a governmental unit, in which the latter agrees to pay (or to provide
something of value) for something of value from the former. (14) It is understandable
that the courts in those cases held that immunity from suit barred claims based on
those contracts because the underlying purpose of governmental immunity from suit
is "to shield the public from the costs and consequences of improvident actions of
their governments," as well as to promote the following policies:

  "the handling of contract claims against the government involves
policy choices more complex than simply waiver of immunity,"
including whether to rely on administrative processes and what
remedies to allow;


  the government should not be kept from responding to changing
conditions for the public welfare by prior policy decisions
reflected in long-term or ill-considered obligations;


 . . .


  the Legislature is able to deal not only with these policy concerns
but also with individual situations in deciding whether to waive
immunity by resolution, case[] by case, or by statute.


Tooke, 197 S.W.3d at 332 (quoting Lawson, 87 S.W.3d at 522).

 In contrast, the protesting parties did not seek monetary damages, property, or
services from the District and Board: rather, they sought declarations that the
District's 2004 reappraisal and the second notice, issued after the District had rejected
the Appraisal Agreement, was void and that any consideration by the Board of the
appraised value was thus also void. See & compare IT-Davy, 74 S.W.3d at 853
("Sovereign immunity protects the State from lawsuits for money damages.")
(emphasis added). The basis for the protesting parties' arguing that the 2004
reappraisal and second notice were void was that section 1.111(e) deprives the
District of authority to rescind an appraisal agreement. That is, they sought
determinations that the District had acted contrary to law when it unilaterally rejected
the Appraisal Agreement and that the Board had also acted outside its statutory
jurisdiction in rejecting the agreed value because once an appraisal agreement had
been made, the Board had no jurisdiction to review or to alter it. See Tex. Tax Code
Ann. § 41.01(b) (providing that appraisal review board "may not review or reject an
agreement between a property owner or the owner's agent and the chief appraiser
under Section 1.111(e)"). 

 Although the protesting parties' pleadings at times described this case as a suit
to enforce a statutory agreement or even a "contract," their suit is actually one to
determine whether a governmental unit is statutorily bound--as a taxpayer is (15)--to
a section-1.111(e) appraisal agreement. It is, at its core, a suit to determine the
meaning of section 1.111(e). A suit seeking an interpretation of a governmental
unit's or administrative agency's statutory authority, and the related determination of
whether that unit or agency is acting outside of that authority, is not a suit against the
State (as long as money damages are not sought) and is thus not precluded by
immunity from suit. See Fed. Sign, 951 S.W.2d at 404 (indicating that private
litigants may sue State, without legislative permission, for state officials' violations
of state law because such violations are not considered acts of State); Cobb v.
Harrington, 144 Tex. 360, 365-66, 190 S.W.2d 709, 712 (1945) (distinguishing suit
brought "by one whose rights have been invaded or violated by" officials' acts that
are not lawfully authorized--which immunity from suit does not bar because such
actions are not actions of State--from suit that "in essence is one for the recovery of
money from the State or in which a judgment would be satisfied by the payment out
of funds in the State treasury," which immunity from suit bars). Accordingly, a
plaintiff may maintain such a suit without first exhausting administrative remedies
or obtaining legislative permission to sue. See Fed. Sign, 951 S.W.2d at 404;
Hitchcock, 2007 WL 1500305, at *8 (indicating that one need not exhaust
administrative remedies in order to sue for agency's acts exceeding its jurisdiction). 
Moreover, most of the policy considerations underlying immunity from contract suits
are not implicated by the seeking of such relief. 

 For these reasons, this case is distinguishable from W.D. Haden Co. v. Dodgen,
on which the District and Board rely. See 158 Tex. 74, 308 S.W.2d 838 (1958). In
Dodgen, the plaintiff sought to force the State to abide by the original fee assessed
under a license issued to the plaintiff, alleging that the original fee was part of the
"contract" represented by the permit. Id. at 76-77, 308 S.W.2d at 839. There appears
to have been no question that the State had the power to require a greater fee for the
license generally and no argument that its increasing the fee contravened state law. 
Although the plaintiff couched its appellate arguments in terms of whether the
unilateral amendment of the alleged contract was "lawfully authorized," the only
question was whether the State would breach the alleged contract that the license
represented by its increasing the fee, not whether the State would act contrary to
statute in doing so. See id. at 77-78, 308 S.W.2d at 840. The Dodgen court held that
the State was not so bound; in so holding, the court distinguished the case from those
in which a plaintiff seeks to determine whether State officials are acting outside their
statutory or constitutional authority. See id. at 78-79, 308 S.W.2d at 840
(distinguishing Cobb, 144 Tex. at 365-66, 190 S.W.2d at 712 (holding that suit by
taxpayers alleging that they fell outside statutorily defined class subject to occupation
tax, so that State's attempt to collect such tax from them was illegal, was not suit
against State)). 

 In the case before us, the protesting parties in essence argue that section
1.111(e)--by the fact that it renders appraisal agreements "final" upon their
making--deprives an appraisal district of the statutory authority to assess taxes
contrary to that agreement. (16) This is not an allegation merely to enforce an agreement
against a governmental unit in the abstract, without a statutory basis for alleging that
the governmental unit is bound to the agreement. Rather, it is an allegation that a
governmental unit acted outside its statutory authority by unilaterally rejecting an
agreement to which a statute allegedly bound it. Accordingly, the case before us does
not fall within the rule of Dodgen. We thus hold that the trial court has subject-matter
jurisdiction to consider whether section 1.111(e) precludes the District's (and thus the
Board's) actions here. See Cobb, 144 Tex. at 365-66, 190 S.W.2d at 712.

 The trial court dismissed all of the protesting parties' Primary Allegations for
lack of subject-matter jurisdiction, despite their being requests for only declarative
and injunctive relief based, ultimately, on the interpretation of section 1.111(e) and
despite their seeking only a determination of whether the District and Board acted
without authority in their respective actions. This was error for the reasons that we
have indicated above. Under these circumstances, the DJA waives immunity from
suit for the attorney's fees and court costs that the protesting parties also sought. See
Tex. Educ. Agency v. Leeper, 893 S.W.2d 432, 446 (Tex. 1994); Tex. Civ. Prac. &
Rem. Code Ann. § 37.009 (Vernon 1997) ("In any proceeding under this chapter, the
court may award costs and reasonable and necessary attorney's fees as are equitable
and just.") (emphasis added).

 2. Whether the Protesting Parties' Primary Allegations Requesting
Declaratory Relief Are Redundant of the Relief Sought in Their Suit
for Judicial Review (Alternative Allegations)


 The District and Board argue that the trial court lacked subject-matter
jurisdiction of the Primary Allegations for the further, and independent, reason that
the declaratory and injunctive relief that the protesting parties sought was merely
redundant of the relief sought in their suit for judicial review--that is, in their
Alternative Allegations--of the Board's order on their protest. See Strayhorn, 101
S.W.3d at 572 (indicating that when statute provides means to attack agency's order,
one may not maintain declaratory-judgment action that seeks remedies redundant of
those available by statutory means). 

 We disagree. The Texas Tax Code provides that the "procedures prescribed
by this title [the Property Tax Code] for adjudication of the grounds of protest
authorized by this title are exclusive . . . ." Tex. Tax Code Ann. § 42.09(a) (Vernon
2001) (emphasis added). Likewise, a property owner is entitled to appeal an order of
the appraisal review board that determines "a protest by the property owner as
provided by Subchapter C of Chapter 41" of the Texas Tax Code. Id. § 42.01(1)(A)
(Vernon 2001) (emphasis added). Under chapter 41 of the Texas Tax Code, although
a property owner has the general right to protest a "determination of the appraised
value of the owner's property" and "any other action of the chief appraiser, appraisal
district, or appraisal review board that applies to and adversely affects the property
owner," (17) that right of protest does not extend to a matter determined by a section-1.111(e) appraisal agreement. See id. § 41.01(b) ("The [appraisal review] board may
not review or reject an agreement between a property owner or the owner's agent and
the chief appraiser under [Texas Tax Code] Section 1.111(e)."); see also Sondock,
2007 WL 1557424, at *3; BPAC Tex., LP, 2004 WL 2422033, at *3. In fact, an
appraisal review board may not even review such an agreement, much less reject it. 
Tex. Tax Code Ann. § 41.01(b); see Matagorda County Appraisal Dist., 165 S.W.3d
at 331 (noting that appraisal review board "has no authority to change a settlement
reached by a taxpayer and the chief appraiser"). As discussed above, once a section-1.111(e) appraisal agreement has been reached, it becomes final instantly and without
appraisal-board approval. See Tex. Tax Code Ann. §§ 1.111(e), 41.01(b). 
Accordingly, any appraisal-board protest that is already pending on a basis on which
agreement is reached becomes "irrelevant" (that is, moot), and, if no appraisal-board
protest has yet been filed, any protest on a basis on which agreement was reached is
thereafter precluded. See Sondock, 2007 WL 1557424, at *2-3; BPAC Tex., LP, 2004
WL 2422033, at *3. If the board cannot review a section-1.111(e) appraisal
agreement--or determine a pending protest on a basis on which agreement has been
reached under section 1.111(e)--then, logically, a protesting party may not seek
judicial review under Texas Tax Code section 42.01 of matters relating to an
appraisal agreement. See Sondock, 2007 WL 1557424, at *3; BPAC Tex., LP, 2004
WL 2422033, at *3. 

 What the protesting parties sought by their Primary Allegations were
declarations related to the Appraisal Agreement: that the District acted illegally in
unilaterally rejecting that agreement and, therefore, that the Board also acted outside
its jurisdiction by "review[ing] or reject[ing]" an agreement that the District could not
reject. See Tex. Tax Code Ann. § 41.01(b). There is an open question, implicit in
some of the parties' discussion at oral argument and that we need not decide now, as
to whether the Board, which is statutorily prohibited from "review[ing]" the
Appraisal Agreement, could consider these challenges, which are based on the
Appraisal Agreement, in the protesting parties' administrative protest. If these
challenges lay outside the Board's jurisdiction, then the protesting parties' Primary
Allegations would clearly not be redundant of the issues that could be raised in their
suit for judicial review. In any event, the relief that the protesting parties seek under
their Primary Allegations differs from that sought in their Alternative Allegations: in
the former, they seek to hold the District to the Appraisal Agreement ($60,525,090)
because the District (and thus the Board) allegedly acted outside statutory authority
in rejecting the agreement; in the latter, they seek a determination, alternatively, that
the appraised value in the Board's final order was excessive for the use of a flawed
valuation formula and that, had the Coker Unit been appraised equally with
comparable properties, its appraised value would have been $37,732,240. In light of
the protesting parties' challenges and pleadings, we are not prepared to say that the
relief that they sought in their Primary Allegations was, as a matter of law, completely
redundant of what they could seek in their suit for judicial review.

 3. Resolution

 We hold that the trial court had subject-matter jurisdiction to consider the
protesting parties' Primary Allegations and that it erred in dismissing those claims
upon the jurisdictional plea of the District and Board. 

 We sustain the protesting parties' sole issue.

What We Do Not Decide


 We think it prudent to state what we do not decide by this opinion. First, as
stated in footnote 12, above, we do not decide whether the Appraisal Agreement was,
in fact, an agreement created under and subject to Texas Tax Code section 1.111(e). 
The trial court did not decide that matter because it related to the merits, which the
trial declined to consider by having dismissed the Primary Allegations for want of
jurisdiction. See Fort Bend County v. Martin-Simon, 177 S.W.3d 479, 484 (Tex.
App.--Houston [1st Dist.] 2005, no pet.) ("When a trial court learns that it lacks
jurisdiction to hear a cause, the court must dismiss the cause and refrain from
rendering a judgment on the merits."). Additionally, for purposes of this interlocutory
appeal, we must take as true the protesting parties' factual allegations that would
support the Appraisal Agreement's being a section-1.111(e) agreement. See Tex.
Ass'n of Bus., 852 S.W.2d at 446 (providing that, in review of ruling on jurisdictional
plea, court must construe pleadings in plaintiff's favor and look to pleader's intent).

 Second, we do not determine the merits of the protesting parties' Primary
Allegations, that is, whether the District violated section 1.111(e) by unilaterally
rejecting the Appraisal Agreement and whether that violation rendered the second
appraisal and notice void. By dismissing the protesting parties' Primary Allegations,
the trial court declined to exercise its jurisdiction to make these legal determinations,
and there is thus no ruling on the merits for us to review. See Martin-Simon, 177
S.W.3d at 484. 

 Third, we do not determine the open question, implicit in some of the parties'
discussions at oral argument, as to whether the Board could consider the protesting
parties' protest at all if, as the protesting parties assert, the District violated section
1.111(e) by rescinding the Appraisal Agreement, so that the second appraisal and
notice were void and the Appraisal Agreement remained intact. See Tex. Tax Code
Ann. § 1.111(e) (providing that appraisal agreements are final under some
circumstances); § 41.01(b) (precluding appraisal review board from "review[ing] or
reject[ing]" section-1.111(e) agreements) (emphasis added); Matagorda County
Appraisal Dist., 165 S.W.3d at 331 (noting that appraisal review board "has no
authority to change a settlement reached by a taxpayer and the chief appraiser"). 
Neither do we determine whether, as the District and Board argued for the first time
at oral argument, the Board had jurisdiction to determine the preliminary matter of
whether the Appraisal Agreement bound the District. Because the trial court did not
consider the merits of any of the protesting parties' Primary Allegations, because the
District and Board did not assert this particular argument in their joint jurisdictional
plea and did not brief the matter on appeal, and because the record does not show
whether the Board considered at the protest hearing the Appraisal Agreement's
validity for the reasons argued on appeal, (18) we do not consider these appellate
arguments in this appeal. These matters are for the trial court to consider on remand,
if they are raised.

Conclusion


 We rule as follows:

 1. We reverse the complained-of order to the extent that it denied
the District's and Board's jurisdictional plea against MHCB for
lack of standing to assert the Alternative Allegations. 


 2. We further reverse the complained-of order to the extent that it
granted the District's and Board's jurisdictional plea against the
Primary Allegations of the protesting parties and dismissed those
claims.


 3. We remand the cause for the trial court


 a. to render an order granting the District's and Board's
jurisdictional plea to the extent that that plea asserted that
MHCB lacked standing to assert the Alternative
Allegations, 


 b. to render an order dismissing the Alternative Allegations
asserted by MHCB,


 c. to render an order denying the District's and Board's
jurisdictional plea to the extent that that plea attacked the
protesting parties' Primary Allegations, and



 d. to conduct further proceedings consistent with this opinion.



 

 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.
1. Each appraisal district must establish an appraisal office. Tex. Tax Code
Ann. § 6.05(a) (Vernon Supp. 2006). "The chief appraiser is the chief
administrator of the appraisal office." Id. § 6.05(c) (Vernon Supp. 2006).
2. The protest notice incorrectly listed Valero Refining as the lessee of the Coker
Unit.
3. The District and Board also moved for traditional summary judgment, as did
the protesting parties. However, the trial court did not rule on these motions,
but instead ruled only on the jurisdictional plea.
4. We construe the court's reference to the "failure to follow necessary
procedures for appeal and judicial review of appraised value" to refer to the
District's and Board's standing arguments.
5. In their first issue, the District and Board argue that the declaratory relief that
the protesting parties sought was redundant of the protesting parties' suit for
judicial review and was thus impermissible. In their second issue, the District
and Board argue that the protesting parties could not avail themselves of a
declaratory-judgment action merely to create jurisdiction that would otherwise
not have existed in the trial court. 
6. This challenge is slightly different from the standing arguments asserted in the
District's and Board's jurisdictional plea. The reason for this change in the
District's and Board's argument appears to be the protesting parties' belated
assertion below that Valero Refining was the owner at all relevant times. 
Nonetheless, because standing affects subject-matter jurisdiction, and because
one may not waive jurisdictional challenges, we review the District's and
Board's challenge. See Tex. Ass'n of Bus., 852 S.W.2d at 445-46.
7. The protesting parties argue that both MHCB and Valero were named in a
single protest notice "out of an abundance of caution" simply because MHCB
still owned the Coker Unit on January 1, 2004. Although one joint protest was
filed, there were, in effect, two protests submitted under one notice: MHCB's
and Valero Refining's. 
8. See Tex. Tax Code Ann. § 6.41(a) (Vernon Supp. 2006) (establishing
appraisal review boards for each appraisal district); Cameron Appraisal Dist.
v. Rourk, 194 S.W.3d 501, 501-02 (Tex. 2006) (describing appraisal-review-board proceeding as administrative).
9. See Tex. Tax Code Ann. § 1.111(a).
10. See id. § 41.413.
11. See id. § 41.412(a).
12. For purposes of our discussion, we assume without deciding that Lehn's
entering into the Appraisal Agreement was the equivalent of the chief
appraiser's having done so and that Novosad, who was employed by Valero
Energy (Valero Refining's corporate parent) could validly act as Valero
Refining's section-1.111(a) agent for purposes of entering into the Appraisal
Agreement. See Tex. Tax Code Ann. § 1.111(e) (providing for agreement
between appraisal district's chief appraiser and property owner or owner's
agent); cf. Tourneau Houston, Inc., 24 S.W.3d at 909 (holding that subsidiary
corporation that was not designated as parent corporation's section-1.111(a)
agent could not seek judicial review of appraisal board's decision). These
matters go to the merits of the protesting parties' Primary Allegations based on
the allegedly valid Appraisal Agreement, and we may not consider the merits
of such matters in an interlocutory appeal from the granting of a jurisdictional
plea. Moreover, we must take as true the factual allegations in the protesting
parties' petition and construe it in their favor, and, fairly read, that petition
implied that the parties' agents entered into the Appraisal Agreement. See Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (providing that, in
review of ruling on jurisdictional plea, court must construe pleadings in
plaintiff's favor and look to pleader's intent)
.
13. Tex. Tax Code Ann. § 41.01(a)(1) (Vernon 2001).
14. See Tooke v. City of Mexia, 197 S.W.3d 325, 332-33 (Tex. 2006) (considering
suit for damages resulting from breach of contract); Catalina Dev., Inc. v.
County of El Paso, 121 S.W.3d 704, 706 (Tex. 2003) (holding that immunity
from suit precluded claim for breach of contract for sale of county property and
request for specific performance of contract); Travis County v. Pelzel &
Assocs., Inc., 77 S.W.3d 246, 247-48 (Tex. 2002) (considering suit for
damages resulting from breach of contract); Tex. Natural Res. Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849, 853-54 (Tex. 2002) (considering suit for
damages resulting from breach of contract); Gen. Servs. Comm'n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 595-96 (Tex. 2001) (considering suit for
damages resulting from breach of contract); Fed. Sign v. Tex. S. Univ.
, 951
S.W.2d 401, 404-05 (Tex. 1997) (holding that immunity from suit barred claim
that, although couched in terms of suit alleging potential state-law violations,
sought monetary damages for breach of contract); Herring v. Houston Nat'l
Exch. Bank, 113 Tex. 264, 269, 253 S.W.2d 813, 814-15 (1923) (considering
suit to recover from State on promissory notes); Tex. S. Univ. v. State St. Bank
& Trust Co., 212 S.W.3d 893, 902-03, 909 (Tex. App.--Houston [1st Dist.]
2007, pet. denied) (considering suit for damages for breach of contract and for
declarations of contractual rights); TRST Corpus, Inc. v. Fin'l Ctr., Inc., 9
S.W.3d 316, (Tex. App.--Houston [14th Dist.] 1999, pet. denied) (considering
suit for damages for, among other things, breach of contract and declarations
of rights under contract).
15. See Sondock v. Harris County Appraisal Dist., No. 14-06-00676-CV, 2007 WL
1557424, at *2 (Tex. App.--Houston [14th Dist.] May 31, 2007, no pet.)
(holding that trial court did not err in rendering summary judgment for
appraisal district, in suit for judicial review of appraisal review board's ruling
appraising property's value pursuant to appraisal agreement entered into during
protest before board, because appraisal agreement was final and thus rendered
any board orders irrelevant); BPAC Tex., LP v. Harris County Appraisal Dist.,
No. 01-03-01238-CV, 2004 WL 2422033, at *3 (Tex. App.--Houston [1st
Dist.] Oct. 28, 2004, no pet.) (mem. op.).
16. The same can be said of the protesting parties' allegations against the Board. 
The gist of those allegations is that, because the District's Chief Appraiser
acted contrary to law in rejecting the Appraisal Agreement and issuing a
second appraisal and notice, the second notice and appraisal were void, and the
Appraisal Agreement remained intact; because the Appraisal Agreement
remained intact, the Board also acted outside its jurisdiction in issuing an order
that, in effect, rejected the still-valid Appraisal Agreement.
17. Tex. Tax Code Ann. § 41.41(a)(1), (9) (Vernon 2002).
18. The protesting parties' notice of protest to the Board alleged that the second
notice was invalid for unspecified reasons, but the record does not show
whether the Board considered the specific argument that the second notice was
invalid because statute bound the District to the Appraisal Agreement.